STATE OF NORTH CAROLINA by the ATTORNEY GENERAL, T. L. HARGROVE, on the relation of T. F. LEE *v.* SIDNEY M. DUNN.

Chap. 106, Sec. 3, Bat. Rev. requiring a sheriff elect who has theretofore been sheriff, to produce his tax receipts from the proper officer, before again being inducted into the office, imposes no additional qualification upon the eligibility to office of such sheriff elect, other than those required by the Constitution, Article VI, Section 1, but only prescribes an assurance for the faithful discharge of the duties of the office. The General Assembly has authority to prescribe such assurances as the general welfare demands, and therefore the act is not unconstitutional.

*Van Bokkelen* v. *Canaday*, decided at this term, cited and approved.)

This was a CIVIL ACTION, tried before *Henry, J.,* at January (Special) Term, 1875, of WAKE Superior Court.

The relief demanded was that the defendant be ousted and ejected from the office of sheriff of the county of Wake, which office he, at the institution of this action, held by appointment of the county commissioners. The facts as settled by his Honor and sent up as a part of the record, are as follows :.

It was admitted that the relator had been, before the election in August, (1874,) elected sheriff of Wake county, and had held the office for two years preceding. During this period he had collected large amounts of county and State taxes, and had failed to pay over the same to the proper officer as required by law, and was at the time of election, and has been ever since, largely in default of payment of county taxes collected by him by virtue of his office. That he had appeared before the Board of County Commissioners and demanded to be inducted into office and that the Board had required of him to tender his bonds and to exhibit his receipt for the taxes theretofore collected. He refused to do this, but demanded that he should first be declared elected, and stated that upon being duly declared elected, that he would tender and justify his said official bonds, but did not offer to exhibit any receipt.

for the taxes collected by him, and admits that he has none such. Thereupon the Board of Commissioners declared the office vacant, and proceeded to elect the defendant, who gave the bonds and took the oaths required by law, and was inducted into office.

It appeared in evidence that there were cast for the relator, at House Creek Township, ——— votes, and for the defendant ——— votes, and that when the voting commenced in the morning at that township, there were only four ballot boxes used, because poll-holders and judges of election could not be found to perform the required duties. One of these boxes was for ballots for Superintendent of Public Instruction, one for Solicitor, one for Congress and one for members of the General Assembly and county candidates. During the forenoon attention was called to the irregularity of allowing voters to deposit ballots containing the names of candidates for county officers and those of candidates for the General Assembly in the same box, and a fifth box was then provided, into which the ballots cast for members of the General Assembly were then put. All the ballots cast in the box when the alleged irregularity existed were counted, and of these the relator received ——— votes, and the defendant ——— votes.

It was insisted for the defendant, that the votes thus cast were illegal and void, and if all were not void, at least all those deposited in said box before the fifth box was obtained and opened were void, and requested the Court so to charge the jury. The Court declined so to charge, but instructed the jury that these votes should be counted unless there was fraud in the voting on the part of voters or judges of the election, and if there was no actual fraud the irregularity did not vitiate any of those ballots and they should all be counted. To this charge of his Honor the defendant excepted.

The following issues were submitted to the jury :

1. Was the relator elected sheriff ?

2. Did he offer to tender bond and justify the same ?

The jury found the first issue in the affirmative and the second in the negative.

Special instructions were asked for both by the relator and the defendant, but they are not pertinent to the case as decided in this Court, and are therefore omitted.

By consent of the parties, the question of law as to the right of the relator to be inducted into office, notwithstanding his defalcation as former sheriff, was reserved, and upon the argument the relator insisted that the act requiring one who had theretofore been sheriff to settle with and pay up to the officers entitled to receive the taxes from him before entering upon the duties of his said office, (Bat. Rev., sec. 3, chap. 106,) was in conflict with Art. VI of the Constitution and void, and upon the facts demanded judgment of *ouster* of the defendant in order that the relator might be inducted into the office.

The relator further insisted and assigned for error apparent on the face of the record that his Honor submitted to the jury the following issue to-wit : Did the relator offer to tender bond and justify the same, the said issue being uncertain and immaterial and so far as it affected the case, was affirmed by the relator in his complaint, and admitted by the defendant, in his answer.

The Court was of opinion that the act referred to was not void, and the relator was not entitled to be inducted into said office, unless he settled and paid up the taxes, as required by law, before such induction. The Court thereupon gave judgment for the defendant, and the relator appealed.

*Batchelor,* with whom was *Haywood, Badger, Devereux, Battle & Son,* and *Gatling,* argued :

I. When the Constitution itself has prescribed both the qualifications and disqualifications of voters, the Legislature cannot enact a law which prescribes a new and additional qualification, or which repeals any constitutional disqualifi-

cation. *McCafferty* v. *Guger*, Leading election cases, 44–59 Penn. Rep., 109.

II. When the Constitution has prescribed both the qualifications and disqualifications of office holders, the Legislature cannot enact a law, which prescribes a new and additional qualification, or which repeals any constitutional disqualification. See note to case above cited for authorities. Leading election cases 51.

III. *But with respect to voters*, it is clearly within the just and constitutional limits of the legislative power, to adopt any *reasonable* and *uniform* regulations in regard to the *mode* of exercising the right of voting, which will secure its enjoyment in a prompt, orderly and convenient manner.

*a.* But the Legislature cannot, under the pretext and color of *regulating, subvert or injuriously restrain,* the right itself.

*b.* For example : A statute requiring that, previous to an election, the qualifications of voters shall be proved and their names placed in a register, is not to be regarded as prescribing a *qualification*, in addition to those which, by the Constitution, entitled a citizen to vote, but only a *reasonable regulation of the mode of exercising the right of suffrage,* which it is competent for the Legislature to make. *Japen* v. *Foster.* Leading election cases, p. 51, 12 Pickering, 485.

*c.* But where the law under the pretence of *regulating,* prescribes rules for exercising the right, which invade it, fritter it away, or entirely destroy it, they are absolutely void and of no effect. *Page* v. *Allen,* leading cases on election, p. 62 ; note 58 Penn., St. Rex. 338. Case at this term in the matter of the city of Wilmington.

IV. *In respect to office holders,* it is clearly within the just and constitutional limits of the Legislative power, to adopt any *reasonable* and *uniform* regulations in regard to the manner of exercising the right of holding office, which secure from the *person about to enter* upon the duties of a public office, guarantees that he will be conscientious in the discharge of such duties, and faithful to the public obligations that he is

about to assume. *Commonwealth* v. *Jones*, Am. Law Reg., vol. 14, p. 374–378.

*a*. But the Legislature cannot, under the pretence and color of *regulating* the right of holding office, either *subvert*, or injuriously restrain the *right* itself.

*b*. For example, a statute requiring that previous to entering upon the discharge of the duties of a public trust, the officer elect shall enter into bond for the faithful and conscientious discharge of his public duties and obligations, which he is about to assume, is not to be regarded as prescribing a *qualification* for holding office, in addition to those ordained by the Constitution, but is only a *reasonable regulation of the mode of exercising the right of holding office,* by securing a guaranty that the officer will be conscientious in the discharge of his duty, and faithful to the public obligations he is about to assume.

*c*. But where the statute, under pretence of *regulating*, prescribes rules for exercising the right to hold office, which invade, suspend, fritter away, or destroy the right itself, it is absolutely void and of no effect.

V. These propositions, we think, cannot be disputed. We understand the defendant's counsel to admit them, and the solitary question in our case is : Whether Rev. Code, chap. 105, sec. 6, which enacts " that no person shall be eligible to the office of sheriff who theretofore has been sheriff, and has failed to account for the public funds;" and prohibits the county commissioners from permitting any such person to give bond, or enter upon the duties of sheriff, until he has produced before them his receipts for the public taxes, *is a reasonable regulation of the manner of exercising the constitutional right to hold office ; to secure the faithful discharge of the duties of the office by the sheriff elect for the future,* or is it a law which invades the constitutional right to hold office, by prescribing a qualification for the office of sheriff, not ordained by the Constitution ; and enforces this unconstitutional qualification by inflicting a punishment for a past offence, through

the intervention of a body of men which is not judicial, and by proceedings which are not due process of law; or, in other words, if the Court gives this enactment effect, does it not make the same a self-executing penal statute, which tries without accusation, hears and determines without proof and opportunities for defence, and imposes punishment without notice to the culprit, of his condemnation.

*Merrimon, Fuller & Ashe,* with whom were *Smith & Strong* and *Pace,* contra, argued:

1st. The Constitution is in the VI, Art. 4 and 5, sections in accurate in language. Art. IV "except as *hereinafter* provided." See Art. II, sec. 9, Senators must be twenty-five years of age, citizens of the United States for two years, and residents of their districts one year.

Art. II. sec. 10, Representatives must reside in their counties twelve months immediately preceding their election.

By Art. III, sec. 2, Governor and Lieutenant Governor must be thirty years of age, five years citizen of the United States and two years citizen of the State.

2nd. In Art. IV, sec. 30, is a sheriff spoken of and there alone. He need not be a resident of the county for which he is elected, and there are no duties prescribed for him by the Constitution, nor is it provided (as it is in Art. III sec. 13, with regard to Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction and Attorney General) " that their duties shall be prescribed by law."

Where then does the General Assembly get the power to prescribe the duties of sheriff?

It is an *implied power,* and implication must be made for the good government of the State and the safety of the people, which is the supreme law. *McCulloch* v. *State of Maryland,* 4 Wheaton, 316. Story on the Constitution, p. 308, 309 and 310, sec's. 432, 433, 434. Cooly on Constitutional Limitation, p. 64 and 65. Especially is this so in the matter of the statute,

Bat. Rev. ch. 106, sec. 3, under the Art. IV, sec. 24, of the Constitution.

But it is for the appellant to show that the Legislature is restricted by the express provisions of the Constitution, or by necessary implication therefrom. *State* v. *Adair*, 66 N. C. Rep. 303. And this he must show beyond a reasonable doubt. *King* v. *W. & W. R. R. Co.*, 66 N. C. Rep. 227.

See *Johnson* v *Rankin*, *et. al.*, 70 N. C. Rep. 555, as to construction of act of 1846. Dwarris on Statutes, p. 185 top.

1st. It is a hoary statute, not passed for any such purpose as Mr. Badger suggested.

2nd. It shows that it was intended to provide additional and greater safe-guards for the public, and better guarantees for the faithful performance of duties of officers.

3rd. The fact that it has been in force so long demonstrates its usefulness by the best test to wit: The experience of generations. But the counsel argues that this statute superadds an *additional* qualification for office to that prescribed in the Constitution, and the stress of the latter part of Mr. Haywood's and the whole of Mr. Badger's argument was on that point.

Is it not so with the requiring of a bond? Where is the Constitutional authority to require any bond? So with additional oath to that prescribed. *McCulloch* v. *State Maryland*, which now is prescribed in the Constitution. *Rniso* v. *Farr*, 24 Ark. 169. So *Thomas* v. *Owens*, 4 Maryland Reports, p. 190, does not militate against but confirms the proposition I have attempted to maintain on the subject of implied power, p. 223. So with *Is.* v. *Dorsey*, 7 Porter's (Ala.) Reports, p. 358 and 360, expressly supports my position. So the case of *St. Joseph* and *Denver City R. R. Co.* v. *Buchanan Co.*, 39 Missouri, 485, and *State of Missouri ex. rel.* v. *Williams*, 316. But this construction of the Constitution has the sanction of cotemporaneous interpretation. Ordinances of the Convention ch. 10, p. 50, sec. 4, Acts of special session of 1868,

ch. 1, p. 3. See also ch. 8, p. 9; ch. 12, p. 15, sec. 10; ch. 13, sec. 1, p. 17; ch. 18, sec. 1, p. 19.

I have attempted to show, and have shown, by the record:

1. That the relator did not give the bond required by law, and did not offer to tender the same.

2. That having been theretofore sheriff of Wake county, he had not settled the State and County Taxes which he had collected, and did not produce to the Board of Commissioners the receipts of the proper officers therefor; and I have argued that having failed to do both, or either of these acts, he was not entitled to induction into office.

I have attempted to maintain this proposition?

*First.* That the Constitution having provided for the election of a sheriff without prescribing his duties, it confers upon the General Assembly, *by implication*, the right to prescribe the duties of the office, the mode and prerequisites of investiture, to regulate the manner in which he shall discharge the duties, and to declare the consequences of malfeasance or misfeasance. And I have admitted that the doctrine is subject to these restrictions:

1. There can be no implication against a constitutional inhibition; and

2. That the implied power must be for the legitimate purpose of promoting the general welfare; and on this point I refer your Honors, in addition to the references of yesterday, to Story on the Constitution, vol. i, secs. 432, 433 and 434, pp. 308, 309 and 310.

I then attempted to show that the Act of 1806, by fair, legitimate construction does *not* render the relator, and those in like case, ineligible to office generally, or even to the particular office; but on the contrary, recognizes his eligibility; and that instead of disqualifying him, it only declares that he shall not discharge the duties of the office *until* he has produced the receipts of the proper officers.

READE, J. We have decided at this term, in *Van Bokkelen* v.

*Canaday*, that it is not within the power of the Legislature to enlarge or abridge the qualifications of voters; and the same is evidently true as to officers. It is admitted that the same arguments and principles are applicable to each. If, therefore, the Act of the Legislature, and the Board of Commissioners acting under it, required of the relator any other qualification than the Constitution requires, it must be disregarded; and he must be inducted into office, whatever charges there may be against him; or, however well supported. If the people in their Constitution declare a defaulter eligible to office, and then elect a defaulter to office, it is not within the power of the Commissioners' Court, nor of this Court, to object. Our province is, strictly, to declare what the law is, and not what it ought to be. And this we say, as we so often have to say, to exclude a conclusion to the contrary. Nor do we mean by the illustration, to say that the relator is a defaulter.

The Constitution, Article VI, section 1, prescribes the qualition of voters to be as follows: "Every male person, &c., twenty-one years old or upwards, who shall have resided in this State twelve months next preceding the election, and thirty days in the county in which he offers to vote, shall be deemed an elector."

The fourth section is as follows:

"Every voter, except as hereinafter provided, shall be eligible to office," &c.

The exception above, is contained in the fifth section, as follows:

"The following classes of persons shall be disqualified for office: First, all persons who shall deny the being of Almighty God. Second, all persons who shall have been convicted of treason, perjury, or of any other infamous crime; or of corruption or malpractice in office; unless such person shall have been legally restored to citizenship."

So that every voter who does not deny the being of God, and has not been convicted of crime, is eligible to office in this State. And this comes so near including every man, that it

may be said, that almost every man is eligible to office; that is to say, is electable, if the people choose to elect. And this was the intention, to give the people the largest class out of which to choose.

Without burdening the case with what seems to have been a little sparring for some advantage between the relator and the Board, we may assume that the relator appeared before the Board of Commissioners after having been duly elected by the people; that he had all the qualifications of a voter; did not deny the being of God, and had not been convicted of crime; and was therefore eligible to office, and entitled to be inducted into the office of Sheriff, to which he had been elected.

Why then was he not let in? Why was the popular will defeated? It is of the first importance that the offices of the government should be filled by the proper persons; and the office of sheriff is very near to the people. And it is a grave offence to fill the office wrongfully.

The relator says that he stood before the Board a "proper man," and demanded to be inducted into office, offering to comply with every rightful requirement; and that the Board required of him qualifications which the Constitution does not require, and wrongfully refused to induct him into the office; and instead thereof inducted into the office the defendant, whom he had defeated at the polls.

On the other hand, the Board alleges that it admitted the relator's eligibility and his election, and his right to be inducted into the office, and offered to induct him requiring only such assurances for the discharge of the duties of the office as the Constitution and laws require; and that the defendant refused to give the assurances. And that such refusal "created a vacancy" which they proceeded to fill by the appointment of the defendant, who was eligible thereto, and gave all the required assurances; and was only a few votes behind the relator at the polls.

1. The first question is, did the Board require of the de-

fendant any "*qualification*" which the Constitution does not require?

All the difficulty in arriving at the proper solution of this question, grows out of not drawing the distinction between *eligibility* or *qualifications* for office; and *assurances* for the *faithful discharge* of the *duties* of the office. Such distinction is plain, as this will illustrate: Who is eligible to office? Answer: Almost every body. Is there not danger of abuses from making eligibility so common? Answer: No; because we require ample assurances to guard against abuses. What are those assurances? Answer: (1.) An oath which binds the conscience. (2.) A bond with sureties to answer in money; and. (3), if he has been in the office already, a receipt for moneys paid over as evidence of his integrity.

It has been stated already what are the qualifications for office; and that no others can be prescribed by the Legislature or required by the Board. And it is clear that the relator had all the necessary qualifications. And yet, he says that the Board refused to let him into the office, because he was a defaulter. And that thereby the Board sat in judgment on him and convicted him, which it had no power to do; for that the Constitution prescribes that one is disqualified for corruption or malpractice only "*after* he shall have been *convicted*;" which means convicted by due course of law. But this is a ghost of the relator's own raising. The Board admitted his eligibility, his qualifications; said not a word about his corruption or malpractice, and offered to induct him if he would give the required *assurances* for his *faithfulness.*

After prescribing who are eligible to office, the Constitution, in section 4, provides that every one, before entering upon the duties of office, shall take an oath to support the Constitution, and to be faithful in office. But this does not enter into *eligibility* for office. One must be eligible when elected; the oath is after election. It is simply an *assurance* which one is to give after election, and before entering into the office that he will be faithful to the government and to his office, which as-

surance is binding on his conscience. And this is the only
assurance required of many officers, such as the Governor,
members of the General Assembly, Judges, &c. And that is
the only *assurance* which is required *in terms* by the Con-
stitution.

But can it be supposed that every other assurance is pro-
hibited? If so, then no bond can be required; and so the
public funds, and all moneys in the hands of officials, are in
jeopardy. This proposition is so monstrous that it was admit-
ted for the relator that a bond and surety could be prescribed
by the Legislature and demanded by the Board, although none
is prescribed by the Constitution. But by what reasoning can
it be maintained that a bond may be required? Only upon
the ground that a bond is a reasonable and proper *assurance*
for the public safety; a *regulation* which experience has shown
to be necessary; reasonable in itself, and deprives no man of
his rights, and is not intended, directly or indirectly, to abridge
them. Cooley's Con. Lim, 1, 602. If that reasoning is sound,
as unquestionably it is, then any other assurance which can be
supported by the same reasoning may be required. And this
brings us to the question directly in dispute:

2. Is the statute under which the Board acted, requiring the
relator, who had been sheriff for the preceding term, to pro-
duce his receipt for taxes, &c., in violation of the Constitution,
as requiring an additional *qualification*, or is it a *reasonable*
and *proper regulation* of the office, and an assurance for in-
tegrity?

The Constitution creates, or rather recognizes the existence
of, the office of sheriff. It does not prescribe the *duties* of
the office. And yet, we cannot impute the folly of creating
an office without any duties. And so we have to assume,
either that the Constitution meant to recognize the office of
sheriff already existing, with all its duties and regulations, or
else, that the Legislature should prescribe its duties and regu-
lations anew. Either aspect is fatal to the relator, and fully
justifies the Board. At the time of the adoption of the Con-

stitution, and for a long time before, our statute law required a sheriff elected to a second term to exhibit a receipt for the settlement of the taxes, &c., before entering upon the duties of his second term. And so, at the end of each year, every sheriff had, and still has, to appear before the Board and pro- duce his receipts for the past year and renew his bonds. And a failure to do so in any instance " creates a vacancy," (to use the language of the statute,) which the Board immediately proceeds to fill. And yet it was never before supposed that these regulations were elements of *eligibility* or *qualifications* for office. It is a prudent *business regulation* to hold an agent to short settlements and frequent exhibitions of his vouchers. And our experience and knowledge of human nature teach us that one who has been tried and found faithful may reasonably be trusted again, and on the contrary, one who has been tried and found wanting, ought no longer to be trusted. It is only by one's deportment in office that he acquires the reputation of a faithful or a faithless public servant. And such reputation is often the most satisfactory assurance that he will or will not be faithful if trusted again.

The relator says that the Board ought not to have refused him, because he had not been "convicted" by due course of law, and that the Board had no power to convict him.

If he had been convicted by due course of law, then that conviction would have put him out of the " *class* " of persons " *qualified* " for office, and the Board would have refused him for that reason. And it would have refused him even if sub- sequent to conviction he had paid over the taxes and taken a receipt and exhibited it to the Board. He would not, in that case, have stood before the Board a " proper man." But here the Board conceded that he was a proper man ; that he had not been convicted ; that he may have accounted for all moneys ; that he might have the receipt in his pocket and they only asked him to produce it. And it is only from the relator him- self that we learn that he had no receipt to produce. The Board produced against him no " conviction " for " corruption

or malpractice," nor any charge founded upon malicious rumor or a licentious press, but permitted him " to try himself," and he confessed himself to be a defaulter ; that he had been faithless to his duties and the assurances which he had given for their performance. If, upon this exhibition the Board had permitted him to enter again upon the duties of the office which he had abused, it would have been an outrage, for which, probably, they would have been criminally liable.

As against the view which we have presented, decisions have been cited, such as the following : One was required by statute to swear that he had not fought a duel ; when the Constitution had no such requirements. Another was required to swear that he had not been a rebel; when the Constitution had no such requirement : Held that the requirements could not be enforced because they embraced a class of persons not embraced by the Constitution, related to matters not pertaining to the offices, and were not intended to be, and were not, in fact, appropriate *assurances* for the faithful discharge of the duties of the offices. Such cases fall in the class embraced by Cooly in his book on Constitutional Limitations, sec. 602, as follows :

" All regulations of the elective franchise, however, must be uniform, reasonable and impartial. They must not have for their purpose directly or indirectly to deny or abridge the constitutional right of the citizen to vote, or unnecessarily to impede its exercise. If they do, they must be declared void." And what is true of the right to vote is also true of the right to hold office. It will be noted how the cases cited differ from our case. There, the requirements were entirely foreign to the office, unnecessarily and partially abridged the right to office, and were not intended to be, and were not in fact, fit *assurances* for *faithfulness.* The very reverse of which is true in our case in every particular.

The authorities cited may be found in the full briefs of

counsel. We have attentively considered them, and they are readily distinguishable from our case.

It is not necessary that we should decide whether *mandamus* or *quo warranto* is the proper remedy, as neither can avail the relator.

We are of the opinion that the relator is not, and that the defendant is, entitled to the office in controversy.

PER CURIAM. Judgment affirmed.