THE STATE v. GEORGE W. PATTERSON.

*Constitution—General Assembly—Statute.*

1. The provisions of the Constitution, in respect to the forms and methods to be observed by the General Assembly in the enactment of laws, are mandatory.

2. A statute without an enacting clause is void.

(*Scarborough* v. *Robinson*, 81 N. C., 409, cited).

CRIMINAL ACTION, tried before *Clark, Judge,* at Fall Term, 1887, of CABARRUS Superior Court.

The defendant is charged in the indictment with the offence of selling spirituous liquors within a territorial boundary in the county of Cabarrus, within which the sale of such and other classes of liquors is prohibited by the supposed statute (Pr. Acts 1887, ch. 113, §8.) He pleaded not guilty, and on the trial relied upon the defence, that the statute cited above was inoperative and wholly void, because it has no enacting clause, that is, the words, "The General Assembly of North Carolina do enact," do not immediately appear at all in connection with it as a particular act.

The Court decided that the statute was valid without such

appearance of an enacting clause, and the defendant excepted, and assigned this ruling as error.

There was a verdict of guilty, and judgment against the defendant, from which he appealed.

*The Attorney General* and *Messrs. T. C. Fuller, Geo. H. Snow* and *E. C. Smith,* for the State.

*Messrs. C. M. Busbee* and *John Devereux, Jr.,* for the defendant.

MERRIMON, J. The very great importance of the Constitution as the organic law of the State and people cannot be overstated. It is the embodiment of a system of free government of the people, affecting them collectively and individually, in many respects of the highest moment to them. Every provision of it is significant, as prescribing the form of government, conferring, defining, limiting and restraining power and authority delegated by the people to officers and agents of government, and as prescribing how, when and by whom such powers shall be exercised and its provisions executed. The Constitution within its compass, is supreme in its nature, as the established expression of the will and purpose of the people as to State government; and a distinctive and pervading feature of it is that it must prevail—be observed, upheld and enforced, according to its true intent and meaning, by every person within its jurisdiction, and especially by the officers and agents—whether individually or collectively, as composing co-ordinate branches of government—charged with the administration and enforcement of its powers and provisions, who, in addition to the ordinary obligations of patriotic duty, are, by its terms, required to take an oath to support it. It is not to be disregarded, ignored, suspended, or broken in whole or in part, nor can any officer or a co-ordinate branch of the government supply, superadd or assume power and authority not conferred by it. In this

latter respect it expressly provides that "all powers not herein delegated remain with the people."

More particularly, for the present purpose, when the Constitution prescribes and directs in terms, or by necessary implication, that a particular power shall be exercised in a specified way, or a particular thing shall be done by a particular co-ordinate branch of government—as the Legislature—or by a particular officer or class of officers, and prescribes the way and manner of doing it—such direction cannot be disregarded—a due observance of it is essential, because the Constitution so provides, and its provisions are not in vain or of trifling moment. It is not of the nature of constitutions of government to provide non-essentials—useless unimportant details—such as may be disregarded and dispensed with. As we have said, they are organic—made upon solemn consideration by the sovereign authority, and contain general, essential provisions—details are avoided, unless deemed important—essential. Non-essential details are left to the discretion of those who exercise and administer the powers of government. If this were not so, why prescribe the way and manner? Why not leave these things to convenience and the authority charged with the exercise of the power? Why direct them? Why restrict them? And if such directions may be disregarded, ignored, suspended in some respects, then to what extent and in what respects? If one co-ordinate branch of the government, or one class of officers, may do so, why may not another, and all, as to duties devolved upon them respectively directly by the Constitution?

The answer to these and like questions must be, that requirements of the Constitution shall prevail and be observed; and when it prescribes that a particular act or thing shall be done in a way and manner specified, such direction must be treated as a command, and an observance of it essential to the effectiveness of the act or thing to be done. Such

act cannot be complete—such thing is not effectual until done in the way and manner so prescribed.

To interpret the Constitution otherwise would be to establish a dangerous rule subversive of it—one that would place it, to a great and alarming extent, within the power of, and subject to, the will of the legislature, executive officers and Courts—its creatures. This would be inconsistent with the nature—the supremacy of constitutions. A chief purpose of them is to prevent a usurpation of power not conferred, whether by construction, false interpretation or otherwise. Hence, this Court held in *Scarborough* v. *Robinson*, 81 N. C., 409, that the signatures of the presiding officers of the two branches of the General Assembly, in pursuance of Art. II, § 23, of the Constitution, must be affixed to an act of legislation during the session of that body, and that they are essential to its completeness and efficacy. In this connection we refer approvingly to the wise comments and cautionary suggestions of Mr. Justice COOLEY, in his learned work on Constitutional Limitations, (pp. 78–83,) in respect to the impropriety and danger of applying the rules of interpretation as to directory provisions of statutes to the interpretation of constitutional provisions. See also *Hunt* v. *The State*, 22 Texas, Ct. of App., 396; *May* v. *Rice*, 91 Ind., 546; *Swan* v. *Buck*, 40 Miss., 268; *The Seat of Government case*, 1 Wash. Yer., 115; Cushing's Rev. Law, § 2103.

We know there are cases to the contrary decided by Courts of great respectability, but we cannot hesitate to adhere to what we conceive to be the more reasonable, the proper and safe rule to be applied in the interpretation of constitutions, which gives certain effect to their provisions.

We cite some of the cases last referred to: *McPherson* v. *Leonard*, 29 Md., 377; *City* v. *Riley*, 52 Mo., 424; *Pierpont* v. *Cranch*, 10 Cal., 215; and there are other cases more or less like them. Some of these decisions seem to have been prompted by a disposition to help imperfect and careless

legislation. This, we are sure, should never be done to such extent as to invade constitutional limitations. There seems to be a tendency in the administration of government to treat constitutions lightly—as if they were little more than ordinary statutes. How far this may imperil free institutions in the future remains to be seen. In our judgment, it ought not to be encouraged, and especially, the Courts should prevent and restrain it when, and as far as they may, properly do so.

In the case before us, what purports to be the statute in question has no enacting clause, and nothing appears as a substitute for it. The appellant contends that it is void and utterly ineffectual. On the other hand, the appellee insists that an enacting clause is not essential to the validity of a statute, and inasmuch as that referred to is in all other respects complete, it is valid and operative. The Constitution, in Article II, in prescribing how statutes shall be enacted, provides as follows:

"Sec. 21. The style of the acts shall be: " *The General Assembly of North Carolina do enact.*"

"Sec. 23. All bills and resolutions of a legislative nature shall be read three times in each House, before they pass into laws, and shall be signed by the presiding officers of both Houses."

It thus appears that its framers, and the people who ratified it, deemed such provisions wise and important, the purpose being to require every legislative act of the legislature to purport and import upon its face to have been enacted by the General Assembly, and to be further authenticated by the signatures of the presiding officers of the two Houses comprising that body. The purpose of thus prescribing an enacting clause—"the style of the acts"—is to establish the act—to give it permanence, uniformity and certainty—to identify the act of legislation as of the General Assembly— to afford evidence of its legislative, statutory nature, and to

secure uniformity of identification, and thus prevent inadvertence, possible mistake and fraud. Such purpose is important of itself, and as it is of the Constitution, a due observance of it is essential.

The manner of the enactment of a statute is of its substance. This is so in the nature of the matter, as well as because the Constitution makes it so. If the Legislature should pass a merely verbal expression of its will, not in writing, in respect to a particular matter three times, such act would not be a statute or have effect. It must be expressed in writing, or printed, so that it can be seen, read and preserved. A bill perfected and passed is not a statute—it cannot become so until it is authenticated. It ought regularly to have a clause of ratification. It must certainly be authenticated by the enacting clause prescribed and the signatures of the presiding officers of the two Houses. This Court has held in *Scarborough* v. *Robinson, supra,* that the signatures of these officers affixed to the bill, passed while the Legislature was in session, was essential to make it a statute; and for the like and other reasons the enacting clause is likewise essential. As we have seen, it serves an important purpose in connection with the statute—it is evidence, high evidence, of the enacting authority and the enactment— the Constitution makes it so; and what authority under the Constitution can be heard to say that it is not important and may be dispensed with?

There is nothing in the nature of its purpose, and nothing in the Constitution itself, that implies that it may be dispensed with, any more than the signatures of the presiding officers; it serves the like purpose with them, and a further important one.

We are, therefore, of the opinion that the supposed statute in question has not been perfected, and is not such in contemplation of the Constitution; that it is wholly inoperative

and void, and that the assignment of error must be sustained.   There is error.

Let this opinion be certified to the Superior Court, according to law.

Error.