JAMES LEONARD BAKER, JR. v. JAMES G. MARTIN, IN HIS CAPACITY AS GOVERNOR OF THE STATE OF NORTH CAROLINA; LACY H. THORNBURG, IN HIS CAPACITY AS ATTORNEY GENERAL WITH THE STATE OF NORTH CAROLINA; AND J. TODD BAILEY, IN HIS CAPACITY AS PRESIDENT OF THE 24TH JUDICIAL DISTRICT BAR

No. 246PA91

(Filed 6 December 1991)

1. **Constitutional Law § 50 (NCI4th)— standing to challenge constitutionality of statute**

   Plaintiff showed sufficient injury to give him standing to challenge the constitutionality of the statute requiring appointees to vacancies in the office of district court judge to be members of the same political party as the vacating judge where the record shows that plaintiff went to a meeting of a District Bar Association at which nominees to fill a vacancy were selected but that he was not considered because of his political party affiliation.

   **Am Jur 2d, Constitutional Law §§ 188-191.**

BAKER v. MARTIN

[330 N.C. 331 (1991)]

2. **Judges § 4 (NCI3d) — district court judges — appointment to fill vacancy — same political party — constitutionality of statute**

The provision of N.C.G.S. § 7A-142 requiring a person appointed to fill a vacancy in the office of district court judge to be a member of the same political party as the vacating judge does not violate Art. VI, § 6 or Art. VI, § 8 of the N. C. Constitution, since § 6 applies only to eligibility for election to office and not to eligibility for appointment to an elective office, and the statement of specific grounds for disqualification from office set forth in § 8 does not imply the exclusion of other grounds for disqualification.

**Am Jur 2d, Judges § 239.**

3. **Judges § 4 (NCI3d) — district court judges — appointment to fill vacancy — same political party — constitutionality of statute**

The provision of N.C.G.S. § 7A-142 requiring a person appointed to fill a vacancy in the office of district court judge to be a member of the same political party as the vacating judge does not violate Art. IV, § 10 of the N. C. Constitution, providing that vacancies on the district court bench shall be filled "in a manner prescribed by law," and Art. IV, § 19 of the N. C. Constitution, providing for appointments by the Governor to fill vacancies, since § 10 contemplates implementing legislation for such appointments, and § 19 does not govern exclusively the appointment of district court judges.

**Am Jur 2d, Judges § 239.**

Justice MITCHELL dissenting.

Chief Justice EXUM and Justice MARTIN join in this dissenting opinion.

Justice MARTIN dissenting.

Chief Justice EXUM and Justice MITCHELL join in this dissenting opinion.

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of an order granting summary judgment in favor of defendants, signed by *Guice, J.,* out of court, session and county by consent of the parties and entered in the Superior Court, WATAUGA County on 9 May 1991. Heard in the Supreme Court 9 September 1991.

BAKER v. MARTIN

[330 N.C. 331 (1991)]

The plaintiff appeals from the entry of summary judgment in favor of the defendants upholding the constitutionality of N.C.G.S. § 7A-142. On 29 March 1991 the Honorable Phillip Ginn, a member of the Democratic Party, resigned his office as district court judge in the Twenty-fourth Judicial District. Defendant J. Todd Bailey, president of the Twenty-fourth Judicial District Bar, called a meeting pursuant to N.C.G.S. § 7A-142 to nominate three candidates for Judge Ginn's vacant seat.

Mr. Bailey announced at the meeting that pursuant to N.C.G.S. § 7A-142, only members of the Democratic Party would be considered as candidates. The plaintiff (a member of the Republican Party) brought this action to have N.C.G.S. § 7A-142 declared unconstitutional insofar as it prevented him from being considered as a candidate for district court judge. The superior court denied the plaintiff's motion for summary judgment and allowed the defendants' motion for summary judgment.

The plaintiff appealed.

*Petree, Stockton & Robinson, by William F. Maready and G. Gray Wilson, for plaintiff appellant.*

*Lacy H. Thornburg, Attorney General, by Isham B. Hudson, Jr., Senior Deputy Attorney General and David Roy Blackwell, Special Deputy Attorney General, for defendant appellees.*

WEBB, Justice.

[1] The first question presented in this appeal is whether the plaintiff has standing to bring this action. The defendants, relying on *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 168 S.E.2d 401 (1969) and *Watkins v. Wilson,* 255 N.C. 510, 121 S.E.2d 861 (1961), *cert. denied,* 370 U.S. 46, 8 L.Ed.2d 398 (1962), argue that the plaintiff has not been injured by the action of the defendants in this case, and for this reason the plaintiff does not have standing to bring the action. The record shows that the plaintiff went to the meeting of the Twenty-fourth District Bar Association at which the nominees were selected. He was not considered because of his political party affiliation. This is a showing of sufficient injury to the plaintiff so that he has standing to bring this action.

[2] The plaintiff contends that N.C.G.S. § 7A-142, which governs the appointment of persons to fill the unexpired terms of district

court judges, violates the Constitution of North Carolina. N.C.G.S. § 7A-142 provides in pertinent part:

> A vacancy in the office of district judge shall be filled for the unexpired term by appointment of the Governor from nominations submitted by the bar of the judicial district. . . . If the district court judge was elected as the nominee of a political party, then the district bar shall submit to the Governor the names of three persons who are residents of the district court district who are duly authorized to practice law in the district and who are members of the same political party as the vacating judge[.]

The plaintiff contends that certain provisions of the North Carolina Constitution set the qualifications for appointment to the office of district court judge and, by placing the additional qualification on candidates that they be members of the same political party as the vacating judge, N.C.G.S. § 7A-142 violates the Constitution.

The plaintiff relies on N.C. Const. art. VI, § 6 which provides:

Sec. 6. Eligibility to elective office.

> Every qualified voter in North Carolina who is 21 years of age, except as in this Constitution disqualified, shall be eligible for election by the people to office.

The plaintiff says that he is a qualified voter who is 21 years of age and no other provision of the Constitution disqualifies him from office. He says that he is eligible under this section of the Constitution to be appointed district court judge and that the General Assembly by requiring that appointees be members of a certain political party has unconstitutionally added a qualification for the office of district court judge.

In determining the constitutionality of a statute we are guided by the following principle: "[e]very presumption favors the validity of a statute. It will not be declared invalid unless its unconstitutionality be determined beyond reasonable doubt." *Gardner v. Reidsville*, 269 N.C. 581, 595, 153 S.E.2d 139, 150 (1967), *quoting Assurance Co. v. Gold, Comr. of Insurance*, 249 N.C. 461, 463, 106 S.E.2d 875, 876 (1959). *See also Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E.2d 745 (1968); *State v. Matthews*, 270 N.C. 35, 153 S.E.2d 791 (1967); *Ramsey v. Veterans Commission*, 261

**BAKER v. MARTIN**

[330 N.C. 331 (1991)]

N.C. 645, 135 S.E.2d 659 (1964). This is a rule of law which binds us in deciding this case.

The appellant contends, and the minority agrees, that N.C. Const. art. VI, § 6 applies to both appointments and elections to office. They say that except as the Constitution provides otherwise, and there are no such provisions in this case, this section makes the plaintiff eligible for the office of district court judge and the General Assembly cannot add another qualification. They base this contention on the heading to the section which says "[e]ligibility to elective office." They contend that this includes both election to office and appointment to the office.

We do not believe the heading to N.C. Const. art. VI, § 6 makes the meaning of the section so clear that the unconstitutionality of N.C.G.S. § 7A-142 can be determined beyond a reasonable doubt. The plain words of the section deal with the eligibility "for election by the people to office." The plaintiff and the dissenters would have us interpret this language, because of the heading, to say that it deals with a class of office called "elective office[s]" rather than a process called "election to office." This distorts the plain meaning of the words used in this section.

The dissent's interpretation which attributes the overriding meaning of the section to the heading requires manipulation of the actual text. Only by emphasizing the term "elective" as found in the heading can this section of the Constitution be read as referring to a whole class of offices as opposed to referring to what makes one eligible for "election to office." In order to make clear the interpretation advanced by the dissent, N.C. Const. art. VI, § 6 should be amended to read as follows: "[e]very qualified voter in North Carolina . . . shall be eligible for [elective office]." Such an amendment would require changing "election" to "elective" and deleting the words "by the people." If, as the dissent proposes, this section is to apply both to elections to office and appointments to elective office, the words "by the people" are unnecessary. A gubernatorial appointment requires no participation "by the people." However, the words "by the people" are very much a part of the section, and they make it clear the section refers to the process of election.

N.C. Const. art. VI, § 6 should not be read as referring to elective office generally, because such a construction creates an inconsistency between § 6 of art. VI, and § 2 of the same article.

As noted above, § 6 states that "[e]very qualified voter . . . shall be eligible. . . ." Under § 2, however, a qualified voter must have "resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days *next preceding an election*. . . ." N.C. Const. art. VI, § 2 (emphasis added). Under the dissent's view, one must only be a qualified voter to be eligible for appointment to an elective office. Yet, because the appointment could occur at any time, the language in § 2 requiring residency for thirty days "next preceding an election" is uncertain of application. Section 2 and § 6 are perfectly consistent and understandable if each is regarded as referring to an "election to office." But, in some cases it could be impossible to determine, prior to an election, if a nominee for appointment to an elective office meets the residency requirement.

The history of N.C. Const. art. VI, § 6 supports the conclusion that it is meant to refer to an "election to office" situation rather than to appointment to an "elective office." In 1913, this provision in the Constitution was found in art. VI, § 7, and it read as follows: "[e]very voter in North Carolina, except as in this article disqualified, shall be eligible to office. . . ." In *Spruill v. Bateman*, 162 N.C. 588, 77 S.E. 768 (1913), this Court held unconstitutional under this section a statute which prevented a person not an attorney from taking office as a recorder's court judge after he had been elected. Since that time the section was amended to read as it currently does, with reference to "qualified voter" and stating that the eligibility is for "election by the people to office." Clearly the scope of this section was narrowed by the amendment so that it applies only to election to office. The section is not affected by N.C.G.S. § 7A-142.

Even if we concede that N.C. Const. art. VI, § 6 is ambiguous, in that the italicized heading is broader than the body of the section, allegiance to the most basic principle of constitutional interpretation demands that the Court not take the extraordinary step of declaring N.C.G.S. § 7A-142 unconstitutional. It certainly is not *clear* that the General Assembly has overstepped its constitutional authority.

> Since our earliest cases applying the power of judicial review under the Constitution of North Carolina . . . we have indicated that great deference will be paid to acts of the legislature — the agent of the people for enacting laws. This

BAKER v. MARTIN

[330 N.C. 331 (1991)]

Court has always indicated that it will not lightly assume that an act of the legislature violates the will of the people of North Carolina as expressed by them in their Constitution and that we will find acts of the legislature repugnant to the Constitution only "if the repugnance do really exist and is plain."

*State ex rel. Martin v. Preston*, 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989) (citation omitted).

Justice Mitchell, in his dissent, argues that even if the majority is correct in its interpretation of N.C. Const. art. VI, § 6, N.C.G.S. § 7A-142 is still unconstitutional because it offends N.C. Const. art. VI, § 8. Justice Mitchell argues that the framers, by enunciating three disqualifications for office in N.C. Const. art. VI, § 8, meant to exclude all other disqualifications for office, whether the office be elective or appointive. To bolster his argument, Justice Mitchell summons forth the doctrine of *expressio unius est exclusio alterius*, *i.e.*, the expression of one thing is the exclusion of another. As stated by Justice Mitchell, "under the doctrine of *expressio unius est exclusio alterius*, the expression of specific disqualifications *implies* the exclusion of any other disqualifications." *Baker v. Martin*, 330 N.C. at 343, 410 S.E.2d at 896 (Mitchell, J., dissenting) (emphasis added).

This doctrine is a commonly used tool of *statutory* construction, but the dissent fails to cite any North Carolina case in which it has been utilized to interpret our Constitution. While many tools of statutory construction are appropriate for and consistent with constitutional interpretation, we have found no North Carolina case in which this doctrine has been used to interpret our Constitution. Perhaps this dearth of authority can be attributed to the fact that this doctrine flies directly in the face of one of the underlying principles of North Carolina constitutional law. As Justice Mitchell himself stated for the Court in *Preston*:

[I]t is firmly established that our State Constitution is not a grant of power. *McIntyre v. Clarkson*, 254 N.C. 510, 515, 119 S.E.2d 888, 891 (1961). All power which is not *expressly limited* by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution. *Id. See Lassiter v. Board of Education*, 248 N.C. 102, 112, 102 S.E.2d 853, 861 (1958); *Airport Authority v. Johnson*, 226 N.C. 1, 8, 36 S.E.2d 803, 809 (1946).

*Preston*, 325 N.C. at 448-49, 385 S.E.2d at 478 (emphasis added); *see generally Town of Emerald Isle v. State of N.C.*, 320 N.C. 640, 647, 360 S.E.2d 756, 761 (1987) (outlining scope of judicial review of challenge to the constitutionality of legislation enacted by the General Assembly).

This fundamental concept, that a state constitution acts as a limitation, rather than a grant of power, is certainly not unique to North Carolina. The California Court of Appeal, for example, recently reviewed the basic principles of California constitutional law as set out in previous decisions of the California Supreme Court. The following passage from that opinion could serve just as easily as a primer for North Carolina constitutional law:

> Unlike the federal Constitution, which is a grant of power to Congress, the California [North Carolina] Constitution is a limitation or restriction on the powers of the Legislature. Thus, the courts do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited. Further, "[i]f there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used." Consequently, the express enumeration of legislative powers is not an exclusion of others not named unless accompanied by negative terms. In other words, the doctrine of *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another thing) is inapplicable.

*County of Fresno v. State of California*, 268 Cal. Rptr. 266, 270 (Cal. App. 5 Dist. 1990) (citations omitted), *judgment aff'd*, 53 Cal. 3d 482, 808 P.2d 235, 280 Cal. Rptr. 92 (1991); *see also Eberle v. Nielson*, 78 Idaho 572, 578, 306 P.2d 1083, 1086 (1957) ("the rule of *expressio unius est exclusio alterius* has no application to the provisions of our State Constitution"); *County Board of Education v. Taxpayers and Citizens*, 276 Ala. 472, 478, 163 So.2d 629, 634 (1964) ("The power of the legislature except as limited by constitutional provisions is as plenary as that of the British Parliament."). Unless the Constitution *expressly* or by *necessary implication* restricts the actions of the legislative branch, the General Assembly

BAKER v. MARTIN

[330 N.C. 331 (1991)]

is free to implement legislation as long as that legislation does not offend some specific constitutional provision.

Applying this general principle of constitutional interpretation to our case, we note that N.C. Const. art. VI, § 6 does expressly limit disqualifications to office for those who are elected by the people to those disqualifications set out in the Constitution. However, no provision of the Constitution so limits disqualifications to office for those who are appointed, whether the appointment be for a purely appointive office or to fill the unexpired term of an elective office. The wording of N.C. Const. art. VI, § 8 also does not *necessarily* imply that additional disqualifications cannot be added by the General Assembly for those persons not elected by the people. Instead, N.C. Const. art. VI, § 8 merely enumerates three disqualifications, one of which applies only to offices filled by election by the people.[1] Had the framers wanted to limit the disqualifications to those outlined in N.C. Const. art. VI, § 8 and other constitutional provisions, they could have done so easily by rewriting the first sentence in N.C. Const. art. VI, § 8 to read: "Unless otherwise provided for in this Constitution, only the following persons shall be disqualified for office: . . . ."

Furthermore, if one were to take Justice Mitchell's argument to its logical conclusion, it would invalidate a host of appointive positions throughout all three branches of state government. This is true because N.C. Const. art. VI, § 8 deals with *all* offices, not just those in the judicial branch. Thus, Justice Mitchell's view, if accepted by the Court, would invalidate appointments to fill vacant seats in the General Assembly. N.C.G.S. § 163-11(d) (1991) (vacancies must be filled by someone from the same political party).

---

1. N.C. Const. art. VI, § 8 reads: "*Disqualifications of office.* The following persons shall be disqualified for office:

First, any person who shall deny the being of Almighty God.

Second, with respect to any office that is filled by election by the people, any person who is not qualified to vote in an election for that office.

Third, any person who has been adjudged guilty of treason or any other felony against this State or the United States, or any person who had been adjudged guilty of a felony in another state that also would be a felony if it had been committed in this State, or any person who has been adjudged guilty of corruption or malpractice in any office, or any person who has been removed by impeachment from any office, and who has not been restored to the right of citizenship in the manner prescribed by law."

Notary public appointments likewise would become unconstitutional. N.C.G.S. § 10A-4 (1991) (those wishing to be appointed notaries public must complete a course of study). Finally, to adopt Justice Mitchell's view would call into question the numerous appointments to the various state licensing boards, such as the Board of Barber Examiners and Board of Cosmetic Art Examiners, all of which require specific qualifications for appointment not included in the Constitution.

[3] The plaintiff also relies on N.C. Const. art. IV, § 10 and § 19. N.C. Const. art. IV, § 10 provides in part:

> The General Assembly shall, from time to time, divide the State into a convenient number of local court districts and shall prescribe where the District Courts shall sit, but a District Court must sit in at least one place in each county. District Judges shall be elected for each district for a term of four years, in a manner prescribed by law. . . . Vacancies in the office of District Judge shall be filled for the unexpired term in a manner prescribed by law.

N.C. Const. art. IV, § 19 provides in part:

> Unless otherwise provided in this Article, all vacancies occurring in the offices provided for by this Article shall be filled by appointment of the Governor, and the appointees shall hold their places until the next election for members of the General Assembly that is held more than 30 days after the vacancy occurs, when elections shall be held to fill the offices.

The plaintiff says N.C. Const. art. IV, § 10 provides for the creation of district courts and that vacancies on the district court bench shall be filled "in a manner prescribed by law." He contends that N.C. Const. art. IV, § 19 prescribes the manner in which district court judges are appointed and nowhere in this section does it say that a person must be of a certain political party to be eligible for appointment as a district court judge. The plaintiff says it is unconstitutional to add such a qualification.

The phrase "in a manner prescribed by law" appears in two places in N.C. Const. art. IV, § 10. It appears in that part of the section providing for the election of judges and that part of the section providing for the appointment of judges. It follows that the identical words used in the same section must have an identical meaning. It is clear that as applied to the election of

BAKER v. MARTIN

[330 N.C. 331 (1991)]

judges the phrase "in a manner prescribed by law" means that the General Assembly must play some part. The complicated procedure governing elections is not set forth in the Constitution. If the phrase has the same meaning in dealing with the appointment of judges, it means the General Assembly has some part to play. N.C. Const. art. IV, § 19 does not govern exclusively the appointment of district court judges.

The General Assembly in this case has chosen to protect the mandate of the previous election by providing that the appointed judge should be of the same political party as his or her predecessor. In *Rivera-Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 72 L.Ed.2d 628 (1982), the United States Supreme Court held it did not violate the United States Constitution for Puerto Rico to protect the mandate of the people by requiring a legislator to be of the same political party as his or her deceased predecessor. That case is different from this case in that it involved the interpretation of the United States Constitution and we are interpreting the Constitution of North Carolina. It also dealt with a legislative appointment and we are dealing with a judicial appointment. However, it does illustrate that the protection of the mandate of an election is a legitimate concern.

We hold that the General Assembly may require that in the interim appointment of a district court judge preference must be given to a member of the same political party as the vacating judge. In this state judges are elected in partisan elections. We may not like this method and the plaintiff refers in his brief to some efforts by members of this Court and others to move away from political partisanship in the selection of judges. We take notice of the fact that to date these efforts have been unsuccessful. The people, through our Constitution, have opted for election of judges. As long as this is the policy, we are bound by it. We, as a Court, cannot set the policy.

The plaintiff relies on *Starbuck v. Havelock*, 252 N.C. 176, 113 S.E.2d 278 (1960); *Cole v. Sanders*, 174 N.C. 112, 93 S.E. 476 (1917); *Spruill v. Bateman*, 162 N.C. 588, 77 S.E. 768; and *State of N.C. by the At. Gen'l, Hargrove, ex rel. Lee v. Dunn*, 73 N.C. 595 (1875), for the proposition that qualifications for holding office may not be added to those found in the Constitution. These cases deal with elections to offices and are not applicable to this case. This case deals with an appointment to office. We do not in this

case hold that the plaintiff is not qualified to hold the office of district court judge. He can run in the next election and, if successful, he can hold the office. We hold in this case that because he is not of the same political party as the departing judge, the General Assembly may provide that he may not be considered by the Twenty-fourth District Bar as a candidate for appointment.

The minority says, "[u]nder the majority's view of this section, one not eligible under its terms could be appointed, but not elected to public office." We do not speculate on this hypothetical. N.C. Const. art. IV, § 22 prevents the appointment of one who is not licensed to practice law in the courts of this state. We quote former Chief Justice Walter Clark when it was suggested that the General Assembly could make people eligible for office who were not qualified voters. Chief Justice Clark said "[i]t may be, therefore, that the General Assembly of this State could make eligible to office those who are not voters, as to which we express no opinion. The Constitution contains no prohibition, in terms, as to this." *Spruill v. Bateman*, 162 N.C. 588, 592, 77 S.E. 768, 769.

Affirmed.

Justice MITCHELL dissenting.

Only by focusing upon a single one-sentence section of one article of the Constitution of North Carolina—without proper regard for other sections of that Constitution—is the majority able to conclude that the challenged provision of N.C.G.S. § 7A-142 is constitutionally valid. As Justice Martin has demonstrated in his dissenting opinion in which the Chief Justice and I have joined, the majority errs in its view that Section 6 of Article VI of the Constitution of North Carolina applies only to "elections by the people to office." Even if it is assumed *arguendo* that the majority is correct in this interpretation of Section 6, however, the majority still errs in concluding that the legislature has constitutional authority to adopt disqualifications for state office which disqualify otherwise qualified persons who are not members of a particular political party.

In their Constitution, the people of North Carolina have established an integrated and comprehensive set of disqualifications for state office. In Section 8 of Article VI of the Constitution of North Carolina, entitled "Disqualifications for office," the people of North Carolina have declared that certain classes of "persons

shall be disqualified for [state] office." Section 8 expressly disqualifies from holding elective state office, for example, those not qualified to vote in an election for the office they seek to fill. Section 8 also mandates, *inter alia*, that those who have been adjudged guilty of treason, of any other felony, or of corruption or malpractice in office shall be disqualified from holding *any* state office — by election or appointment.

By adopting the integrated and comprehensive list of disqualifications contained in Section 8, the people of North Carolina precluded any other disqualifications. This is so because, under the doctrine of *expressio unius est exclusio alterius*, the expression of specific disqualifications implies the exclusion of any other disqualifications. *See Alberti v. Manufactured Homes, Inc.*, 329 N.C. 727, 407 S.E.2d 819 (1991); *Lemons v. Old Hickory Council*, 322 N.C. 271, 367 S.E.2d 655 (1988); *Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 354 S.E.2d 495 (1987). Although the doctrine should not be applied blindly in cases of state constitutional interpretation, it does have a proper place in such cases. *E.g., Attorney General of Canada v. Tysowski*, 118 Idaho 737, 739, 800 P.2d 133, 135 (Idaho Ct. App. 1990) (doctrine applies in state constitutional interpretation); *State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 475 (Tex. Crim. App. 1985) (applying doctrine to hold that state constitutional grounds for disqualification of judges are the *exclusive* grounds). *See Perry v. Stancil*, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) ("Questions of constitutional construction are in the main governed by the same general principles which control in ascertaining the meaning of all written instruments. . . ."). I believe that the statement of specific grounds for disqualifications from office contained in the Constitution of North Carolina must be held to necessarily imply the exclusion of other grounds for disqualification, such as disqualification due to membership in a particular political party.

In any event, until today I had thought it well established — and that a majority of this Court understood, beyond any reasonable doubt — that the legislature cannot add to the disqualifications from state office prescribed in the Constitution of North Carolina. *See, e.g., Cole v. Sanders*, 174 N.C. 112, 93 S.E.2d 476 (1917) (Clark, C.J., concurring). Certainly, the people of North Carolina have understood this fundamental principle; therefore, when the people decided to disqualify those not authorized to practice law from *election or appointment* to this Court or the other courts of the state, they recognized that they could add such disqualification

*only by* an amendment to the Constitution of North Carolina. *See* N.C. Const. art. IV, § 22 (adopted by vote of the people at the election held 4 November 1980).

The people of North Carolina have not included a provision in their Constitution disqualifying any person from holding any state office—whether attained by election or appointment—because he or she is not a member of a particular political party. Nor have the people seen fit to give a majority of the legislature or of this Court the authority to create any such partisan political disqualification. The legislature has exceeded its constitutional authority by attempting to adopt such a partisan political disqualification as a part of N.C.G.S. § 7A-142, and the majority of this Court errs in upholding the legislature's unconstitutional act.

For the foregoing reasons, I dissent from the opinion and holding of the majority.

Chief Justice EXUM and Justice MARTIN join in this dissenting opinion.

Justice MARTIN dissenting.

I conclude that N.C.G.S. § 7A-142, in part, violates our Constitution; therefore, I dissent from the majority opinion.

The majority is correct in holding that this plaintiff had standing to bring this action challenging the constitutionality of N.C.G.S. § 7A-142.

The majority falls into error when it holds that North Carolina Constitution article VI, section 6 deals only with election to office. The section reads in its entirety:

Sec. 6. Eligibility to elective office.

Every qualified voter in North Carolina who is 21 years of age, except as in this Constitution disqualified, shall be eligible for election by the people to office.

N.C. Const. art. VI, § 6.

This section of our Constitution establishes the qualifications that a person must possess in order to hold an elective office in North Carolina. These qualifications apply no matter how a person initially obtains the office, by election or by appointment. It

**BAKER v. MARTIN**

[330 N.C. 331 (1991)]

is undisputed that the office of district court judge is an elective office. N.C. Const. art. IV, § 10 (District Judges shall be elected).

In interpreting our Constitution, this Court has held that every provision of the constitution is significant. It is supreme and none of its provisions can be disregarded, ignored or broken in whole or in part. Nor can any coordinate branch of government add to it or assume power not conferred by it. *State v. Patterson*, 98 N.C. 660 (1887); 5 Strong's N.C. Index 4th *Constitutional Law* § 1 (1990). Thus, this Court cannot disregard that portion of article VI, section 6 reading "Eligibility to elective office," which establishes that the section controls eligibility to elective office and is not, as the majority states, limited to "election to office." Our attorney general has interpreted article VI, section 6 to establish the qualifications for "elective office"; thus, a deputy sheriff need not reside in the county in which he serves. Opinion of Attorney General to Sheriff John H. Stockard, 41 Op. N.C. Att'y Gen. 754 (1972). A person must be eligible to hold an elective office under article VI, section 6, regardless of whether he is elected or appointed to the office. One not eligible under this section can neither be appointed nor elected to public office. Under the majority's view of this section, one not eligible under its terms could be appointed, but not elected to public office. This would be an absurd result and one not contemplated by the framers of this section.

The majority's interpretation of our Constitution leads to the incongruous result of limiting constitutional disqualifications to office for only those "who are elected by the people," and not those appointed to office. This would allow different qualifications for judges for the same office depending upon whether the judge was elected or appointed. Surely, this is contrary to the genius of the people in framing this article of our Constitution.

Article VI, section 8 sets forth the constitutional disqualifications for office, none of which affect plaintiff herein.

The legislature cannot add to the constitutional disqualifications or qualifications for public office. *Cole v. Sanders*, 174 N.C. 112, 93 S.E. 476 (1917) (Clark, C.J., concurring); *State v. Knight*, 169 N.C. 333, 85 S.E. 418 (1915) (Women could not vote, therefore not eligible to elective office); *State v. Bateman*, 162 N.C. 588, 77 S.E. 768 (1913); *Lee v. Dunn*, 73 N.C. 595 (1875).

BAKER v. MARTIN

[330 N.C. 331 (1991)]

In *Bateman*, the legislature in establishing a recorder's court for Plymouth in Washington County required that the recorder, an elective office, be a "licensed attorney at law." This Court held that this was an additional disqualification for office and violated article VI, section 7 (now section 6) of the State Constitution. The purpose of section 6 and its predecessor was to prevent the legislature from disqualifying additional persons from holding elective office. *Accord Lee v. Dunn*, 73 N.C. 595 (1875).

Thus, the legislature had no authority to establish as an additional disqualification for the elective office of district court judge that the person appointed is other than a member of the same political party as the vacating judge. In so doing, the legislature violated article VI, sections 6 and 8 of our Constitution, and that portion of N.C.G.S. § 7A-142 is null and void. The remainder of the statute is unaffected. *Hobbs v. Moore County*, 267 N.C. 665, 149 S.E.2d 1 (1966).

While it may be a rational goal of government to "protect the mandate" of a previous election, this cannot be achieved in a manner which affronts specific constitutional provisions. In developing the argument of "protecting the mandate" of an election, the majority relies upon *Rivera-Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 72 L. Ed. 2d 628 (1982). As the majority opinion concedes, this case is not helpful to the analysis of the issues before this Court. *Rivera* is concerned with the interpretation of the federal constitution and adds nothing to our task of construing provisions of our State Constitution that have no analogue in the federal charter. The legislature's effort to "protect the mandate" cannot withstand constitutional scrutiny.

The majority's argument that "in a manner prescribed by law" must be interpreted the same in every instance that it appears is answered by the majority's opinion itself. True it is, as stated by the majority, the Constitution does not contain the "complicated procedure governing elections" of judicial officers. So, the election of judges "in a manner prescribed by law" does involve implementing legislation.

However, the "manner prescribed by law" for the filling of vacancies in the office of district judge is contained in article IV, section 19 of the Constitution itself: "[V]acancies occurring in the offices provided for by this Article shall be filled by appointment of the Governor . . . ." This is a clear, complete, and detailed

manner of filling judicial vacancies for the office of district judge. No implementing legislation is required; the General Assembly has no part to play in the filling of vacancies in the office of district judge.

For these reasons, I vote to hold that the clause of N.C.G.S. § 7A-142 "who are members of the same political party as the vacating judge" violates article VI, sections 6 and 8 of the State Constitution and is null and void.

Plaintiff is entitled to the entry of summary judgment in his favor.

Chief Justice EXUM and Justice MITCHELL join in this dissenting opinion.