## BOARD OF GRADED SCHOOL COMMISSIONERS OF WINSTON v. BOARD OF EDUCATION OF FORSYTH COUNTY.

(Filed 5 November, 1913.)

1. **School Districts—Graded Schools — Special Districts — General Taxes—Equitable Division.**

   Under the construction of Article IX of our Constitution, higher education is to be encouraged as necessary to good government and the happiness of mankind, and there is no constitutional restriction upon a community, which pays a special tax for graded or other schools to establish better school facilities than those imposed generally by statute, from sharing in the equitable division of the general tax levied in the county for schools under the general statute.

2. **Same—School Buildings—Interpretation of Statutes.**

   Where a graded or other special school district has been established in a city or town in a county where the school funds exceed $25,000, it is the duty of the county board of education to include in the distribution of the fund reserved for building and repairing schoolhouses in the county allowed by the statute, such just and equitable part thereof as is required for such purposes within the graded or special school district established in the city. Revisal, sec. 4116, as amended by chapter 149, Laws 1913.

3. **Same—Control of Buildings.**

   Revisal, sec. 4116, as amended by chapter 149, Laws 1913, requiring, by interpretation, an equitable distribution to graded or special school districts created for a city, of the fund reserved by the county board of education for building and repairing the schoolhouses of the county, the school fund of which exceeds $25,000, is not in conflict with section 4124, for this latter section only makes certain requirement for the building of the schoolhouses, under the control of county board of education, and is silent as to the control of the buildings after they have been erected.

APPEAL by defendant from *Cooke, J.,* at May Term, 1913, of FORSYTH.

This is a controversy submitted without action to construe sections 4116 and 4124 of the Revisal of North Carolina.

The plaintiff is a corporate body and has complete control and supervision of the public schools of the city of Winston. The defendant is a corporate body and has control of the public schools of Forsyth County.

Section 4116 of the Revisal, as amended by chapter 149, Public Laws of North Carolina, 1913, provides that the county board of education, after first reserving a fund sufficient to pay the salary of the county superintendent and the expenses of the county board of education, may reserve a fund for building, repairing, and equipping schoolhouses in counties where the school fund exceeds, as it does in Forsyth County, $25,000, a sum not greater than 7½ per cent of the school fund for said county.

The only question presented is, whether or not the defendant has authority under section 4124 to appropriate money from the building fund to the plaintiff to be used in the erection of a school building in the city of Winston.

It is admitted that the plaintiff has received from the defendant its per capita apportionment as provided in section 4116 for maintaining schools, and that the city of Winston pays more than half the school taxes of Forsyth County levied by the General Assembly.

Judgment was rendered in favor of the plaintiff, and the defendant excepted and appealed.

*Manly, Hendren & Womble for plaintiff.*
*Hastings & Wicker for defendant.*

ALLEN, J. The ninth article of the Constitution is devoted to education, and it is declared in the first section of the article that, "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

This language is taken from the Ordinance of Congress of 1787, passed for the government of the Northwest Territory, and was substantially adopted in the Constitution of Ohio, and was considered in *Board of Education v. Minor,* 23 Ohio St., 211 (13 A. R., 233), in which case the Court says: "The three things so declared to be essential to good government are 'religion,' 'morality,' and 'knowledge.' These three words stand in the same category, and in the same relation to the context; and if one of them is used in its generic or unlimited sense, so are all three. That the word 'knowledge' and the word 'morality'

are used in that sense is very plain. The meaning is, that true religion, true morality, and true knowledge shall be promoted by encouraging schools and means of instruction. The last named of these three words, 'knowledge,' comprehends in itself all that is comprehended in the other two words, 'religion' and 'morality,' and which can be the subject of human instruction. True religion includes true morality. All that is comprehended in the word 'religion' or in the words 'religion and morality,' and that can be the subject of human instruction, must be included under the general term 'knowledge.' Nothing is enjoined, therefore, but the encouragement of means of instruction in general knowledge—the knowledge of truth. The fair interpretation seems to be, that true 'religion' and 'morality' are aided and promoted by the increase and diffusion of 'knowledge,' on the theory that 'knowledge is the handmaid of virtue' and that all three—religion, morality, and knowledge—are essential to good government."

The ideal citizen, then, under the Constitution, is "the wise man and endued with knowledge," leading to a clean, upright life, and to a just conception of true religion.

One of the means to this end is the establishment of a "general and uniform system of public schools," which is enjoined upon the General Assembly by section 2 of Article IX.

This system as outlined in the Constitution, standing alone, does little more than excite and stimulate the desire for knowledge and is inadequate to enable the citizen to reach the higher heights.

It was to be expected, then, in a government founded upon the will of the people, by men who believed that unlimited knowledge leads to true morality and true religion, and that these are necessary to good government and the happiness of mankind, that some provision would be made for higher education, as has been done in the sections relating to the University, and that there would be nothing to discourage those living in thickly settled communities, where property valuations are higher, from incurring obligations, in addition to those imposed by the General Assembly for the system of schools for the entire State, in order that better educational facilities might

be furnished to their children, and we therefore find no pro-
hibition in the Constitution preventing a community, which
pays a special tax for graded or other schools, from sharing in
the equitable division of the tax for schools levied by the State.

It was upon this principle that it was held in *Greensboro v.
Hodgin,* 106 N. C., 182, that it was the duty of the county
authorities to apportion to a graded school district a part of
the school fund levied by the State, but that such district was
only entitled to a just and equitable part, and not necessarily
to as much as it paid.

The authority to make this apportionment, approved by the
Supreme Court, is found in section 4116 of the Revisal, as
amended by chapter 149 of the Laws of 1913; and as the same
statute enjoins the duty upon the county board of education to
reserve a fund for building and repairing schoolhouses in the
county, there would seem to be no good reason for permitting
granded schools to participate in one part of the fund and ex-
cluding them from the other.

The defendant contends, however, that while the board of
education is required to reserve a building fund, in section
4116 of the Revisal, that the disposition of the fund is regulated
by Revisal, section 4124, in which it is said: "The building
of all new schoolhouses shall be under the control and direc-
tion of and by contract with the county board of education.
All contracts for buildings shall be in writing, and all build-
ings shall be inspected, received, and approved by the county
superintendent of public instruction before full payment is made
therefor," and that as the graded school of Winston is under
the control of a board of commissioners and not of the board
of education, the plaintiff has no right to any part of the fund
reserved for buildings.

In other words, the argument of the defendant is that under
section 4124 of the Revisal, all school buildings erected from the
reserve fund provided for in section 4116 must be under the
control of the board of education, and as the graded school
buildings of Winston are controlled by a board of commis-
sioners, and not by the board of education, the graded school
district is not entitled to share in the building fund.

The two sections are parts of one statute, designed to establish a uniform system of public schools, and the language used should be understood with reference to the context, and in that sense which will make the two harmonious and consistent; and a construction of section 4124 should not be adopted, except from necessity, which would deprive the plaintiff of a benefit conferred by section 4116.

No such necessity exists. Section 4124 does not say that all "new schoolhouses" shall be under the control of the board of education, but that "the building of all new schoolhouses" shall be under its control, and that "all contracts for building" shall be in writing and approved by the county superintendent, thereby conferring authority upon the board of education and the county superintendent to exercise reasonable supervision over the contract for the building, and over its performance, but it is silent as to the control of the building after it has been erected.

We are, therefore, of opinion that there is no conflict between the two sections, and that the plaintiff is entitled to share in the building fund reserved by the defendant, under the conditions prescribed in section 4124, which should be enforced reasonably and not arbitrarily.

This construction accords with the opinion of the State Superintendent of Public Instruction, whose duty it is, by statute, to construe the School Law, and while his construction is not binding on us, it is entitled to high consideration.

In his notes and decisions on the School Law he says: "The city schools are entitled to their equitable part of the building fund. They pay their part of it, and in the apportionment of the building fund, just as in the apportionment of the other part of the school fund, they are entitled to be treated exactly like any other public school district of the county. The fact that these districts are operated under a special charter does not prevent them from being public school districts entitled to all the rights and privileges of other school districts in the distribution of the common public school fund, including the building fund. The fact that they issue bonds and levy taxes for better buildings and equipment ought to entitle them to more

consideration instead of less, by the county board of education, in the distribution of the county building fund, and certainly ought not to cause them to be discriminated against by excluding them from sharing in that fund, which they helped to pay, because they are willing to assume an additional burden of taxation to get better houses and equipment than the county and the regular school district can afford to provide. They should be encouraged rather than discouraged in such commendable efforts."

For the reasons given, the judgment is

Affirmed.