SUGAR CREEK CHARTER SCHOOL, INC., ET AL., PLAINTIFFS v. STATE OF NORTH CAROLINA, ET AL., DEFENDANTS

No. COA10-965

(Filed 2 August 2011)

**1. Schools and Education—charter schools—capital funds**

The pertinent statutory provisions clearly preclude charter schools from seeking access to the capital outlay funds maintained in the counties in which they operate.

**2. Schools and Education—sound basic education—non-traditional public schools—funding**

The North Carolina Constitution merely requires that all North Carolina students have access to a sound basic education and does not preclude the creation of schools or other education programs with attributes or funding options different from traditional public schools. Plaintiff charter schools were not entitled to access their county's capital outlay fund.

**3. Constitutional Law—general and uniform school system—charter schools—funding**

Charter schools were not entitled to access counties' capital outlay funds by North Carolina Constitutional provisions concerning a general and uniform system of public schools. Charter schools are public schools but differ from traditional public schools in significant respects. There is no basis for constitutional concern arising from the use of differing funding mecha-

1

nisms to support different types of public schools that are subject to different statutory provisions.

### 4. Constitutional Law— charter schools—uniform laws

There was no "general law" issue under N.C. Const. art. XIV, § 3 in a charter schools funding case. The statutory provisions governing elementary and secondary education are applied uniformly throughout North Carolina, and nothing in this constitutional provision in any way limits the General Assembly's authority to create and provide funding mechanisms for optional schools that differ from those applicable to traditional public schools.

### 5. Schools and Education— charter schools—funding

Constitutional provisions concerning the exclusive use of monies for public schools and the use of local revenues to supplement public school programs did not apply in a case concerning charter school funding. Plaintiffs did not assert that funds intended for public schools were used for another purpose, and the generalized provision authorizing the use of local funds did not address the criteria that the General Assembly must utilize in making funding decisions or preclude the General Assembly from adopting specific provisions authorizing different funding systems for traditional public schools and charter schools.

Appeal by plaintiffs from order entered 4 June 2010 by Judge Forrest Donald Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 February 2011.

*North Carolina Institute for Constitutional Law, by Jason Kay and Robert F. Orr, for Plaintiff-Appellants, Sugar Creek Charter School, Inc.; The Community Charter School; The Metrolina Regional Scholars' Academy, Inc.; Rocky Mount Preparatory School, Inc.; Socrates Academy, Inc.; Thomas Jefferson Classical Academy; and Union Academy; Deborah Hopkins, individually and as guardian ad litem of Sloane Hopkins, Killian Hopkins, and Skylar Hopkins; Gilbert Bailey, individually and as guardian ad litem of Virginia L. Bailey; Cheryl Drake-Bowers, individually and as guardian ad litem of Annika Bowers; James Barnhill and Sharon Barnhill, individually and as guardians ad litem of Austin Barnhill and James Cody Barnhill; Angela Hale, individually and as· guardian ad litem of Mathew Perry, Zachary Perry, and Dustin Lee; Kay Crickmore and David Crickmore, individually and as guardians*

SUGAR CREEK CHARTER SCH., INC. v. STATE OF N.C., ET AL.

[214 N.C. App. 1 (2011)]

*ad litem of Emily Crickmore, Rebecca Crickmore, Rachel Crickmore, and Katherine Crickmore; Pansy Flanagan, individually and as guardian ad litem of William L. Overton; William E. Davis, III and Aphrodite Davis, individually and as guardians ad litem of Eliana M. Davis; Shawn L. Jones, individually and as guardian ad litem of Katherine Jones; Patricia Seguine and Daniel Seguine, individually and as guardians ad litem of Courtney Seguine, Carter Seguine, and Jonah Seguine; Tawanda D. Blount, individually and as guardian ad litem of Bryson Blount; Todd Bennett and Wendy Bennett, individually and as guardians ad litem of Hannah Bennett, Victoria Bennett, and Olivia Bennett; James Smith and Susan Soule-Smith, individually and as guardians ad litem of Evan Smith and Molly Smith; Lynn Kroeger and Ken Kroeger, individually and as guardians ad litem of Peter Kroeger, Christina Kroeger, and Joseph Kroeger; Todd Havican, individually and as guardian ad litem of Kaitlyn Havican and Kelsey Havican; Ron L. Brown, individually and as guardian ad litem of Victoria A. Brown and Daniel S. Brown.*

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Teague Campbell Dennis & Gorham, L.L.P., by George W. Dennis III, J. Matthew Little, and John L. Kubis, Jr., for Appellees County of Mecklenburg, County of Union, County of Nash, County of Halifax, County of Edgecombe, County of Rutherford, and County of Cleveland.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jill R. Wilson, Robert J. King III, and Julia C. Ambrose, for Appellees Charlotte-Mecklenburg County Board of Education, Union County Board of Education, Nash-Rocky Mount Board of Education, Halifax County Board of Education, Edgecombe County Board of Education, Rutherford County Board of Education and Cleveland County Board of Education.*

ERVIN, Judge.

Plaintiffs appeal from an order dismissing their declaratory judgment action for failure to state a claim for which relief can be granted. After careful consideration of Plaintiffs' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

SUGAR CREEK CHARTER SCH., INC. v. STATE OF N.C., ET AL.

[214 N.C. App. 1 (2011)]

## I. Background

The present case arises from a dispute over the extent to which a charter school may apply for funds from the capital outlay fund of the county in which the charter school is located. Plaintiffs are charter schools, charter school students, and the parents of charter school students. Defendants are the State of North Carolina, various North Carolina counties in which charter schools are located, and the boards of education that have been established in those counties.

In their amended complaint, Plaintiffs alleged that "they receive disparate and discriminatory treatment in North Carolina by and through a discriminatory funding practice permitted and enforced by the Defendants" and that they were "being denied the opportunity to receive from counties or local school administrative units capital funding freely granted to traditional public schools." The claims asserted in Plaintiffs' amended complaint rest, at least in part, on N.C. Const. art. IX, § 2(1), which requires the General Assembly to establish a "general and uniform system of public schools;" N.C. Const. art. I, § 19; and the Fourteenth Amendment to the United States Constitution.[1] According to Plaintiffs:

> The present interpretation and enforcement scheme of the Defendants, which deprives charter schools and charter school students of the opportunity to be uniformly considered for expenditures from the capital outlay fund by the counties or local administrative units, detrimentally and unconstitutionally affects the rights of the Plaintiffs to the equal opportunity for a sound basic education in that the discriminatory funding scheme deprives, depletes, or redirects the funding resources of charter schools that are necessary to provide students with the capital facilities sufficient to offer an equal opportunity for a sound basic education.[2]

Based upon these allegations, Plaintiffs sought a declaration that: (1) "the charter school funding statutes are facially unconstitutional or unconstitutional to the extent they are applied to prohibit"

1. As a result of the fact that Plaintiffs have not advanced any arguments resting on alleged violations of the United States Constitution in their brief before this Court, the present opinion focuses exclusively on Plaintiffs' contentions regarding the extent, if any, to which charter schools are entitled to capital outlay funds as a matter of North Carolina statutory and constitutional law.

2. Plaintiffs do not claim on appeal to have been deprived of access to a sound basic education or that existing North Carolina school funding statutes violate their right to the equal protection of the laws guaranteed by the state and federal constitutions.

Defendants from "extending to the Plaintiffs the opportunity to be uniformly considered for expenditures from the capital outlay fund" or that (2) the charter school funding statutes, "consistent with the North Carolina Constitution and other statutory provisions," either "permit" or "must permit" Plaintiffs to have the "opportunity to be uniformly considered for expenditures from the capital outlay fund by the County Defendants."

All Defendants sought dismissal of Plaintiffs' amended complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). After hearing argument concerning Defendants' dismissal motion, the trial court entered an order dismissing Plaintiffs' amended complaint on 4 June 2010. Plaintiffs noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

The standard of review utilized in reviewing orders granting dismissal motions made pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), is well established:

> The standard of review of an order allowing a Rule 12(b)(6) motion is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" "The complaint should be liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." We evaluate all facts alleged and permissible inferences therefrom in the light most favorable to plaintiff.

*Goodman v. Holmes & McLaurin. Attorneys at Law,* 192 N.C. App. 467, 473, 665 S.E.2d 526, 531 (2008) (quoting *Bowman v. Alan Vester Ford Lincoln Mercury,* 151 N.C. App. 603, 606, 566 S.E.2d 818, 821 (2002), and *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC,* 184 N.C. App. 613, 618, 646 S.E.2d 790, 795 (2007) (internal quotation omitted), *aff'd in part and reversed in part on other grounds,* 362 N.C. 431, 666 S.E.2d 107 (2008), and citing *Stephenson v. Town of Garner,* 136 N.C. App. 444, 447, 524 S.E.2d 608, 611, *disc. review denied,* 352 N.C. 156, 544 S.E.2d 243 (2000)). We will now utilize this standard of review to evaluate Plaintiffs' challenges to the trial court's order.

## B. Analysis of Plaintiff's Claims

## 1. Statutory Construction Issues

[1] The initial issue that we must address is whether a charter school has a legal right to apply for funding from the capital outlay fund maintained by the board of education in the county where the charter school is located. Based upon our analysis of the relevant statutory provisions, we conclude that charter schools are not entitled to request such funding.[3]

N.C. Gen. Stat. § 115C-238.29A "authorize[s] a system of charter schools to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently of existing schools[.]" Although charter schools are undoubtedly public schools, they are exempt from the obligation to comply with many of the statutory provisions that govern the operation of traditional public schools, according to N.C. Gen. Stat. § 115C-238.29E, which provides, in pertinent part, that:

> (a) A charter school that is approved by the State shall be a public school within the local school administrative unit in which it is located. . . .

> (b) A charter school shall be operated by a private nonprofit corporation that shall have received federal tax-exempt status[.]

> (c) A charter school shall operate under the written charter signed by the entity to which it is accountable under subsection (a) of this section and the applicant. . . .

> (d) The board of directors of the charter school shall decide matters related to the operation of the school, including budgeting, curriculum, and operating procedures.

> . . .

> (f) Except as provided in this Part and pursuant to the provisions of its charter, a charter school is exempt from statutes and rules applicable to a local board of education or local school administrative unit.

---

3. In their brief, Plaintiffs argue that Defendants have erroneously relied on an opinion of the Attorney General in denying Plaintiffs access to capital outlay funding on statutory grounds. We need not consider the merits of the Attorney General's opinion in order to resolve this case, and do not do so except to the extent that the issues addressed in this case are similar to those addressed in the relevant Attorney General's opinion.

SUGAR CREEK CHARTER SCH., INC. v. STATE OF N.C., ET AL.

[214 N.C. App. 1 (2011)]

The structure of public school budgeting and financial accounting is outlined in the "School Budget and Fiscal Control Act," which appears in Chapter 115C, Article 31, of the North Carolina General Statutes. N.C. Gen. Stat. § 115C-426, which is entitled "Uniform Budget Format," specifies the required funding categories and provides, in pertinent part, that

(a) The State Board of Education, in cooperation with the Local Government Commission, shall cause to be prepared and promulgated a standard budget format for use by local school administrative units throughout the State.

. . . .

(c) The uniform budget format shall require the following funds:

(1) The State Public School Fund.

(2) The local current expense fund.

(3) The capital outlay fund.

In addition, other funds may be recovered to account for trust funds, federal grants restricted as to use, and special programs. Each local school administrative unit shall maintain those funds shown in the uniform budget format that are applicable to its operations.

(d) The State Public School Fund shall include appropriations for the current operating expenses of the public school system from moneys made available to the local school administrative unit by the State Board of Education.

(e) The local current expense fund shall include appropriations sufficient, when added to appropriations from the State Public School Fund, for the current operating expense of the public school system[.] . . . These appropriations shall be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes[,] . . . State money disbursed directly to the local school administrative unit, and other moneys made available . . . to the local school administrative unit for the current operating expenses of the public school system.

SUGAR CREEK CHARTER SCH., INC. v. STATE OF N.C., ET AL.

[214 N.C. App. 1 (2011)]

    (f)  The capital outlay fund shall include appropriations for:

    (1)  The acquisition of real property for school purposes, including but not limited to school sites, playgrounds, athletic fields, administrative headquarters, and garages.

    (2)  The acquisition, construction, reconstruction, enlargement, renovation, or replacement of buildings and other structures[.]

    (3)  The acquisition or replacement of furniture and furnishings, instructional apparatus, data-processing equipment, business machines, and similar items of furnishings and equipment.

    (4)  The acquisition of school buses as additions to the fleet.

    (5)  The acquisition of activity buses and other motor vehicles.

    (6)  Such other objects of expenditure as may be assigned to the capital outlay fund by the uniform budget format.

The cost of acquiring or constructing a new building, or reconstructing, enlarging, or renovating an existing building, shall include the cost of all real property and interests in real property, and all plants, works, appurtenances, structures, facilities, furnishings, machinery, and equipment necessary or useful in connection therewith; financing charges; the cost of plans, specifications, studies, reports, and surveys; legal expenses; and all other costs necessary or incidental to the construction, reconstruction, enlargement, or renovation.

No contract for the purchase of a site shall be executed nor any funds expended therefor without the approval of the board of county commissioners as to the amount to be spent for the site[.] . . . Appropriations in the capital outlay fund shall be funded by revenues made available for capital outlay purposes by the State Board of Education and the board of county commissioners, supplemental taxes[,] . . . the proceeds of the sale of capital assets, the proceeds of claims against fire and casualty insurance policies, and other sources.

    (g)  Other funds shall include appropriations for such purposes funded from such sources as may be prescribed by the uniform budget format.

Like other public schools, charter schools must comply with the procedural requirements specified in the statutory provisions governing the budget format. *Francine Delany New School for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 346, 563 S.E.2d 92, 97 (2002), *disc. review denied*, 356 N.C. 670, 577 S.E.2d 117 (2003) (stating that "[t]he Legislature clearly intended for charter schools to be treated as public schools subject to the uniform budget format."). However, the provisions of N.C. Gen. Stat. § 115C-426, which are procedural in nature, do not address the substantive right of charter schools to seek funding from one or more of the categories enumerated in the budget format statutes. Instead, the resolution of that issue is governed by N.C. Gen. Stat. § 115C-238.29H, which provides, in pertinent part, that:

> (a) The State Board of Education shall allocate to each charter school:

> (1) An amount equal to the average per pupil allocation for average daily membership from the local school administrative unit allotments in which the charter school is located for each child attending the charter school[.] . . .

> . . . .

> (a1) Funds allocated by the State Board of Education may be used to enter into operational and financing leases for real property or mobile classroom units for use as school facilities for charter schools[.] . . . However, State funds shall not be used to obtain any other interest in real property or mobile classroom units. No indebtedness of any kind incurred or created by the charter school shall constitute an indebtedness of the State or its political subdivisions, and no indebtedness of the charter school shall involve or be secured by the faith, credit, or taxing power of the State or its political subdivisions. Every contract or lease into which a charter school enters shall include the previous sentence. The school also may own land and buildings it obtains through non-State sources.

> (b) If a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year[.]

Thus, N.C. Gen. Stat. § 115C-238.29H expressly provides that charter schools are entitled to funds from just two of the three primary sources of local funding for schools set out in the uniform budget format—the local current expense appropriation and the local school administrative unit allotment. "In *Francine Delany New Sch. for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338 [, 346,] 563 S.E.2d 92[, 98] (2002), *disc. review denied*, 356 N.C. 670, 577 S.E.2d 117 (2003), this Court held that the phrase 'local current expense appropriation' in the Charter School Funding Statute, N.C. Gen. Stat. § 115C-238.29H(b), is synonymous with the phrase 'local current expense fund' in the School Budget and Fiscal Control Act, N.C. Gen. Stat. § 115C-426(e). Thus, the Charter Schools are entitled to an amount equal to the per pupil amount of all money contained in the local current expense fund." *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 188 N.C. App. 454, 460, 655 S.E.2d 850, 854, *disc. review denied*, 362 N.C. 481, 667 S.E.2d 460 (2008) (*Sugar Creek I*).

"It is well settled that statutes dealing with the same subject matter must be construed in *pari materia*, 'as together constituting one law.' " *Williams v. Alexander County Bd. of Educ.*, 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998) (quoting *Williams v. Williams*, 299 N.C. 174, 180-81, 261 S.E.2d 849, 854 (1980)). As we noted above, N.C. Gen. Stat. § 115C-426 identifies three primary sources for the support of public schools: the local current expense fund, the State Public School Fund, and the capital outlay fund. N.C. Gen. Stat. § 115C-238.29H specifically provides that charter schools are entitled to receive funding from just two of these three funds. " 'In ascertaining the intent of the legislature, the presumption is that it acted with full knowledge of prior and existing laws.' Further, '[o]ne of the long-standing rules of [statutory] interpretation and construction in this state is *expressio unius est exclusio alterius*, the expression of one thing is the exclusion of another.' Applying such principle here, because the language of [N.C. Gen. Stat. § 115C-238.29H] specifically references only [the local current expense fund,] that language cannot be construed as a reference to another [fund, the capital outlay fund] not specifically mentioned, especially when the drafters were presumed to have been aware of that other [fund]." *Bowles Automotive v. Div. of Motor Vehicles*, N.C. App. ——, ——, 690 S.E.2d 728, 737 (quoting *Williams v. Alexander County*, 128 N.C. App. at 603, 495 S.E.2d at 408, and *Mangum v. Raleigh Bd. of Adjust.*, 196 N.C. App. 249, 255, 674 S.E.2d 742, 747 (2009), and citing *Hunt v. Reinsurance Facility*, 302 N.C. 274, 290, 275 S.E.2d 399, 407 (1981)), *disc. review denied*, 364 N.C.

324, 700 S.E.2d 746 (2010). Thus, by specifically stating that charter schools are entitled to funding from the State allotment and the local current expense fund, the General Assembly intended to preclude charter schools from having access to county capital outlay funds. As a result, we conclude that, since "a county has no power to appropriate funds unless authorized to do so by the General Assembly," *Hughey v. Cloninger*, 297 N.C. 86, 88, 253 S.E.2d 898, 900 (1979), and since there is no statutory provision authorizing charter schools to receive monies from county capital outlay funds, the relevant statutory provisions do not allow charter schools access to county capital outlay funds.

In addition, other statutory provisions governing the operation of charter schools support our conclusion that the General Assembly intended for charter schools to be responsible for providing any needed physical facilities using their own resources. N.C. Gen. Stat. § 115C-238.29B(13) requires an application for authorization to establish a charter school to include "[i]nformation regarding the facilities to be used by the school and the manner in which administrative services of the school are to be provided." In addition, N.C. Gen. Stat. § 115C-238.29D(c) provides that the North Carolina "State Board of Education may authorize a school before the applicant has secured its space, equipment, facilities, and personnel if the applicant indicates the authority is necessary for it to raise working capital." The fact that an applicant for authority to establish a charter school must explain the manner in which it will obtain the necessary facilities as part of its application and that the State Board of Education is authorized to approve an application if the charter school does not have the necessary facilities in hand further suggests that the applicant is responsible for procuring the necessary facilities available on its own.

Our conclusion that charter schools are not entitled to seek assistance from the relevant county's capital outlay fund is also consistent with other differences between the statutory provisions governing the manner in which traditional public schools and charter schools obtain needed facilities. For example, N.C. Gen. Stat. § 115C-517 allows local boards of education to "acquire suitable sites for schoolhouses or other school facilities" and states that "condemnation proceedings to acquire same may be instituted by such board under the provisions of Chapter 40A of the General Statutes." A number of statutory provisions address in detail the construction and maintenance of buildings utilized by traditional public schools. For example, N.C. Gen. Stat. § 115C-521 provides, among other things, that:

SUGAR CREEK CHARTER SCH., INC. v. STATE OF N.C., ET AL.

[214 N.C. App. 1 (2011)]

(a)  It shall be the duty of local boards of education to provide classroom facilities adequate to meet the requirements of G.S. 115C-47(10) and 115C-301. . . .

(b)  It shall be the duty of the boards of education of the several local school [districts] . . . to make provisions for the public school term by providing adequate school buildings equipped with suitable school furniture and apparatus. . . .

(c)  The building of all new school buildings and the repairing of all old school buildings shall be under the control and direction of, and by contract with, the board of education for which the building and repairing is done. If a board of education is considering building a new school building to replace an existing school building, the board shall not invest any construction money in the new building unless it submits to the State Superintendent and the State Superintendent submits to the North Carolina Historical Commission an analysis that compares the costs and feasibility of building the new building and of renovating the existing building and that clearly indicates the desirability of building the new building. No board of education shall invest any money in any new building until it has (i) developed plans based upon a consideration of the State Board's facilities guidelines, (ii) submitted these plans to the State Board for its review and comments, .and (iii) reviewed the plans based upon a consideration of the comments it receives from the State Board. No local board of education shall contract for more money than is made available for the erection of a new building. . . . All contracts for buildings shall be in writing and all buildings shall be inspected, received, and approved by the local superintendent and the architect before full payment is made therefor. . . . In the design and construction of new school buildings and in the renovation of existing school buildings . . . the local board of education shall participate in the planning and review process of the Energy Guidelines for School Design and Construction that are developed and maintained by the Department of Public Instruction and shall adopt local energy-use goals for building design and operation[.] . . . In the design and construction of new school facilities and in the repair and renovation of existing school facilities, the local board of education shall consider the placement and design of windows to use the climate of North Carolina for both light and ventilation in case of power shortages. A local board shall also consider the installation of solar energy systems in the school facilities whenever practicable. . . .

(c1)  No local board of education shall apply for a certificate of occupancy for any new middle or high school building until the plans for the science laboratory areas of the building have been reviewed and approved to meet accepted safety standards for school science laboratories and related preparation rooms and stockrooms. The review and approval of the plans may be done by the State Board of Education or by any other entity that is licensed or authorized by the State Board to do so.

(d)  Local boards of education shall make no contract for the erection of any school building unless the site upon which it is located is owned in fee simple by the board . . . .

In addition, the construction of traditional public schools is subject to the extensive set of statutory requirements applicable to public contracts set out in N.C. Gen. Stat. § Chapter 143, Article 8. On the other hand, N.C. Gen. Stat. § 115C-238.29E(e), which addresses the capital needs of charter schools, provides that:

(e)  A charter school's specific location shall not be prescribed or limited by a local board or other authority except a zoning authority. The school may lease space from a local board of education or as is otherwise lawful in the local school administrative unit in which the charter school is located. If a charter school leases space from a sectarian organization, the charter school classes and students shall be physically separated from any parochial students, and there shall be no religious artifacts, symbols, iconography, or materials on display in the charter school's entrance, classrooms, or hallways. Furthermore, if a charter school leases space from a sectarian organization, the charter school shall not use the name of that organization in the name of the charter school.

At the request of the charter school, the local board of education of the local school administrative unit in which the charter school will be located shall lease any available building or land to the charter school unless the board demonstrates that the lease is not economically or practically feasible or that the local board does not have adequate classroom space to meet its enrollment needs. Notwithstanding any other law, a local board of education may provide a school facility to a charter school free of charge; however, the charter school is responsible for the maintenance of and insurance for the school facility.

As a result, an examination of the relevant statutory provisions indicates that:

1. A charter school is owned by a private non-profit corporation, *see* N.C. Gen. Stat. § 115C-238.29E(b);

2. A charter school is operated pursuant to a charter, which by its own terms expires after ten years and which may be revoked if necessary, *see* N.C. Gen. Stat. § 115C-20D(d);

3. A charter school is free to locate anywhere, regardless of whether there is a need for another school in a given location, *see* N.C. Gen. Stat. § 115C-238.29E(e);

4. A charter school may be located in buildings owned or controlled by religious institutions, *see* N.C. Gen. Stat. § 115C-238.29E(e); and

5. A charter school is not subject to the numerous bidding, construction, and other strictures applicable to traditional public schools.

We conclude that these differences between the statutory provisions governing the operation of traditional public schools and charter schools, although not conclusive, are consistent with our determination that charter schools are not intended to operate in the same manner as traditional public schools, a fact that reinforces our conclusion that charter schools are not entitled to have access to a county's capital outlay fund.

On at least one prior occasion, this Court made a determination consistent with the one that we have found to be appropriate in this case. In *Sugar Creek I*, the plaintiffs sought access to local funds that were not held in the local current expense fund. In response to that request, this Court opined that charter schools were only entitled to receive local funding from the local current expense fund, stating that:

In essence, the Charter Schools contend that all moneys made available to [the local board] by the Board [of county commissioners] are part of the current local expense fund, and thus must be apportioned *pro rata* between the [local public] schools and the Charter Schools before any of those moneys are diverted to other funds. This is inaccurate. . . . [The local board's] local current expense fund, capital outlay fund, and any other funds it establishes may all include money made available to [the local board] by the Board [of county commissioners.]

Furthermore, pursuant to N.C. Gen. Stat. § 115C-431, "[i]f the board of education determines that the amount of money appropriated to the local current expense fund, or the capital outlay fund, or both, by the board of county commissioners is not sufficient[,]" then a meeting between the two boards must be held to discuss the matter. This statute explicitly contradicts the Charter Schools' contention that all the moneys made available to [the local board] by the Board [of county commissioners] are included in the local current expense fund.

Finally, pursuant to N.C. Gen. Stat. § 115C-433(d), "[the local board] may amend the budget to transfer money to or from the capital outlay fund to or from any other fund . . ." This statute contemplates transferring local appropriations to and from the capital outlay fund, to or from any number of other funds, not just the local current expense fund. . . . Thus, contrary to the Charter Schools' contention, not all appropriations from the Board [of county commissioners] to [the local board of education] are included in the current local expense fund and thus subject to apportionment under N.C. Gen. Stat. § 115C-238.29H(b). Since the Charter Schools are only entitled to a *pro rata* share of all money in the local current expense fund, the Charter Schools are therefore entitled to a *pro rata* share of the money made available to [the local school board] by the County Commissioners specifically for the current local expense fund.

*Sugar Creek I*, 188 N.C. App. at 461-62, 655 S.E.2d at 855-56 (emphasis added). Thus, in *Sugar Creek I*, this Court examined the statutes addressing public school funding, including the provisions of N.C. Gen. Stat. §§ 115C-426 and 115C-238.29H; reasoned that, in addition to the local current expense fund, a school system had a capital outlay fund and might also have certain other funds; and explicitly stated that, among the funds made available to a local school board by its board of county commissioners, "the Charter Schools are only entitled to a *pro rata* share of all money in the local current expense fund." As a result, if we were to hold that, in addition to having access to the local current expense fund, charter schools are entitled to funding from the local capital outlay fund, such a holding would conflict with our reasoning in *Sugar Creek I*.

Thus, for the reasons set forth above, we conclude that the pertinent statutory provisions clearly preclude charter schools from seeking access to the capital outlay funds maintained in the counties in which they operate. Although there are certainly similarities between the

ends sought to be served by both traditional public schools and charter schools, the statutory provisions applicable to each type of educational institution differ widely and clearly indicate that the capital needs of traditional public schools and charter schools should be met in different ways. As a result, we conclude that Plaintiffs' request that we interpret the relevant statutory provisions to provide charter schools with access to local capital outlay funds lacks merit.[4]

### 2. Constitutional Provisions

### a. N.C. Const. art. IX, § 2(1)

**[2]** In addition, Plaintiffs argue that they are entitled to access to the relevant county's capital outlay fund in light of the "express provisions of the North Carolina Constitution." Plaintiffs' argument hinges primarily on N.C. Const. art. IX, § 2(1) (2011), which provides that:

> (1) The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students.

This constitutional provision is codified in N.C. Gen. Stat. § 115C-1, which states, in part, that "[a] general and uniform system of free public schools shall be provided throughout the State, wherein equal opportunities shall be provided for all students, in accordance with the provisions of Article IX of the Constitution of North Carolina." According to Plaintiffs, N.C. Const. art. IX, § 2(1) requires that charter schools have access to the same funding sources as traditional public schools, including the capital outlay fund. We are not persuaded by Plaintiffs' argument.

---

4. In addition, Plaintiffs argue that various statutory provisions dealing with the uniform budget format authorize counties to appropriate capital outlay funds to charter schools. As we have already established, however, the statutory language creating the uniform budget format does not address the extent to which specific schools are entitled to obtain funding from any particular source. In addition, Plaintiffs cite various generalized statutory statements concerning the manner in which public schools should be funded. However, we have held in this case that N.C. Gen. Stat. § 115C-238.29H does not authorize charter schools to access capital outlay funds. "One canon of construction is that when one statute deals with a particular subject matter in detail, and another statute deals with the same subject matter in general and comprehensive terms, the more specific statute will be construed as controlling." *Piedmont Publishing Co. v. City of Winston-Salem*, 334 N.C. 595, 598, 434 S.E.2d 176, 177-78 (1993) (citing *Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966)). As a result, we conclude that N.C. Gen. Stat. § 115C-238.29H, rather than the more general statutory provisions upon which Plaintiffs rely, is controlling in this instance.

The Supreme Court has clearly construed the education-related provisions of the North Carolina Constitution, including N.C. Const. art. IX, § 2(1), as follows:

> We conclude that Article I, Section 15 and Article IX, Section 2 of the North Carolina Constitution combine to guarantee every child of this state an opportunity to receive a sound basic education in our public schools. For purposes of our Constitution, a "sound basic education" is one that will provide the student with at least: (1) sufficient ability to read, write, and speak the English language and a sufficient knowledge of fundamental mathematics and physical science to enable the student to function in a complex and rapidly changing society; (2) sufficient fundamental knowledge of geography, history, and basic economic and political systems to enable the student to make informed choices with regard to issues that affect the student personally or affect the student's community, state, and nation; (3) sufficient academic and vocational skills to enable the student to successfully engage in post-secondary education or vocational training; and (4) sufficient academic and vocational skills to enable the student to compete on an equal basis with others in further formal education or gainful employment in contemporary society.

*Leandro v. State of North Carolina*, 346 N.C. 336, 347, 488 S.E.2d 249, 255 (1997). At no point in their amended complaint have Plaintiffs asserted that the State, or any of its subdivisions, has failed to provide them with the constitutionally-mandated access to a sound basic education. Instead, Plaintiffs contend that N.C. Const. art. IX, § 2(1) both mandates that the General Assembly, the State, and the various counties in North Carolina provide for a uniform system of public schools affording all children in grades K – 12 access to a sound basic education and also forbids the General Assembly from establishing any other educational programs or schools. In essence, Plaintiffs argue that:

> The Constitution requires the General Assembly to provide and fund through taxation a single class of general and uniform free public schools. . . . More specifically, under this provision of the Constitution, the State may not create a sub-class of second-class free public schools. Having directed the General Assembly in this specific matter, the Constitution's direction may not be ignored or gutted by the insertion of additional public school systems which do not have the same constitutional rights as others.

We do not believe that the constitutional provision upon which Plaintiffs rely is subject to such an interpretation.

At bottom, Plaintiffs' argument rests on the contention that "the North Carolina Constitution indicates that there is a single class of public schools[.]" Given that, in their view, only a "single class of public schools" is authorized by the constitution, Plaintiffs conclude that all public schools should be treated as traditional public schools for constitutional purposes. Plaintiffs' argument rests primarily on the doctrine *inclusio unius est exclusio alterius*, which we have discussed in connection with the statutory construction issues addressed earlier in this opinion. The interpretive principle upon which Plaintiffs rely does not, however, have any role in the proper construction of N.C. Const. art. IX, § 2(1).

"The standards of constitutional interpretation are well established. It is elementary that the Constitution is a limitation, not grant, of power." *Britt v. N.C. State Board of Education*, 86 N.C. App. 282, 286, 357 S.E.2d 432, 434 (citing *Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E.2d 745 (1968)), *disc. review denied*, 320 N.C. 790, 361 N.C. 71 (1987). "All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution." *State ex rel. Martin v. Preston*, 325 N.C. 438, 448-49, 385 S.E.2d 473, 478 (1989) (citations omitted).

> "[U]nder the doctrine of *expressio unius est exclusio alterius*, the expression of specific disqualifications implies the exclusion of any other disqualifications." This doctrine is a commonly used tool of statutory construction, but . . . we have found no North Carolina case in which this doctrine has been used to interpret our Constitution. Perhaps this dearth of authority can be attributed to the fact that this doctrine flies directly in the face of one of the underlying principles of North Carolina constitutional law.

*Baker v. Martin*, 330 N.C. 331, 337, 410 S.E.2d 887, 891 (1991) (quoting *Baker v. Martin*, 330 N.C. at 343, 410 S.E.2d at 896 (Mitchell, J., dissenting)).[5] Thus, we are unable to infer from the existence of the constitutional mandate requiring the establishment of a general and uni-

_____

5. Plaintiffs argue that the Supreme Court "appl[ied] the maxim *'inclusio unius est exclusio alterius* (inclusion of one is exclusion of another')' in interpreting the North Carolina Constitution" in *In re Spivey*, 345 N.C. 404, 412, 480 S.E.2d 693, 697 (1997), and that *"In re Spivey* implemented and qualified the reasoning of *Baker v. Martin:* the legislature is limited when the 'Constitution expressly or by necessary

form school system sufficient to provide all North Carolina children with access to a sound basic education the existence of a constitutional prohibition on the establishment of additional educational programs that are intended to supplement the statutory provisions effectuating this basic constitutional requirement. Aside from their reliance on the doctrine of *inclusio unius est exclusio alterius*, Plaintiffs cite no authority for their position that, by mandating the establishment of a uniform system of public schools, N.C. Const. art. IX, § 2(1) implicitly bans the establishment of any additional schools or educational programs. After careful study, we conclude that N.C. Const. art. IX, § 2(1) merely requires that all North Carolina students have access to a sound basic education and does not preclude the creation of schools or other educational programs with attributes or funding options different from those associated with traditional public schools.[6] Thus, we conclude that N.C. Const. art. IX, § 2(1) does not implicitly prohibit the establishment of public schools in addition to the traditional public schools that have been established in order to comply with this basic constitutional mandate.

### b. "General and Uniform" System of Free Public Schools

[3] In addition, Plaintiffs argue that the reference in N.C. Const. art. IX, § 2(1) to a "general and uniform" system of public schools affords them access to counties' capital outlay funds. In support of this assertion, Plaintiffs reason that: (1) charter schools, which are indisputably public schools, are necessarily part of the constitutionally-mandated "general and uniform system of free public schools" and that, (2) given their status as a component of the uniform system of public schools, they are entitled to funding identical to that available to other schools in the uniform public school system. As a result,

---

implication restricts the actions of the legislative branch.' " (quoting *Baker*, 330 N,C. at 338-39, 410 S.E.2d at 891-92). After reviewing *Spivey*, we conclude that it does not utilize *inclusio unius est exclusio alterius* to construe a constitutional provision to hold that one grant of authority impliedly excluded another. As a result, nothing in *Spivey* affects the outcome in this case.

6. The General Assembly has created a number of other schools or educational programs that, while properly categorized as public schools, have such differing attributes and funding mechanisms, including:

1. Alternative learning programs or alternative schools, *see* N.C. Gen. Stat. § 115C-105.47A;

2. Adult education programs, *see* N.C. Gen. Stat. § 115C-231;

3. Summer schools, *see* N.C. Gen. Stat. § 115C-233;

4. Extended services programs, *see* § 115C-238.31;

Plaintiffs devoted a considerable portion of their brief to an attempt to demonstrate that charter schools are encompassed within the "general and uniform system of free public schools." Defendants, on the other hand, just as vigorously deny that charter schools are part of the uniform public school system. We need not resolve this issue, however, given that such a determination is not necessary in order for us to properly decide the issues raised by Plaintiffs' appeal.

Although charter schools are public schools, they differ from traditional public schools, as we have already noted, in some significant respects. Charter schools (1) have greater freedom to devise their own educational programs, (2) are entitled to a share of the local current expense fund just like traditional public schools, (3) have the responsibility for providing facilities within which to conduct their operations using their own resources, and (4) are not subject to the same building design rules as those applicable to traditional schools. Thus, charter schools and traditional schools are similar in some respects and different in others.

A charter school might be considered legally to be either (1) a component of the uniform system of public schools, created in addition to those schools required to provide access to a sound basic education and subject to different statutory guidelines and funding options than traditional public schools, or (2) as an optional educational program created outside of and in addition to the uniform system of public schools. As discussed above, we conclude that N.C. Const. art. IX, § 2(1) does not forbid the State from establishing additional schools or educational programs to supplement those traditionally utilized to effectuate the constitutional mandate to provide access to a sound basic education. In view of the differences between charter schools and traditional public schools, we see no basis for constitutional concern arising from the use of differing funding mech-

---

5. Cooperative innovative high school programs, see § 115C-238.50;

6. The North Carolina School for the Deaf, Eastern North Carolina School for the Deaf, Governor Morehead School for the Blind, Early Intervention Services— Preschool, and Governor Morehead Preschool programs, all of which provide educational programs for specific targeted populations; and

7. A "Virtual High School" employing computer-based education, see N.C. Gen. Stat. §§ 115C-81, and 238.50;

The curriculum, funding, and other features of these programs differ from those utilized in or available to traditional public schools. In the event that we were to find that Plaintiffs' constitutional argument had merit, the statutes governing the operation of all of these educational institutions, facilities and programs would be subject to a constitutional challenge as well.

anisms to support different types of public schools that are subject to different statutory provisions. Thus, since the funding mechanisms that the General Assembly has authorized for both traditional public schools and charter schools are constitutional regardless of whether charter schools are or are not components of the uniform public school system, we see no reason to decide whether charter schools are or are not parts of the general and uniform public school system.[7]

### c. N.C. Const. art. XIV, § 3

[4] Next, Plaintiffs argue that depriving them of access to counties' capital outlay funds violates the provisions of N.C. Const. art. XIV, § 3, which provides, in pertinent part, that:

> Whenever the General Assembly is directed or authorized by this Constitution to enact general laws, or general laws uniformly applicable throughout the State, or general laws uniformly applicable in every county, city and town, and other unit of local government, or in every local court district, no special or local act shall be enacted concerning the subject matter directed or authorized to be accomplished by general or uniformly applicable laws[.] . . . General laws may be enacted for classes defined by population or other criteria. General laws uniformly applicable throughout the State shall be made applicable without classification or exception in every unit of local government of like kind, such as every county, or every city and town, but need not be made applicable in every unit of local government in the State. General laws uniformly applicable in every county, city and town, and other unit of local government, or in every local court district, shall be made applicable without classification or exception in every unit of local government, or in every local court district, as the case may be. The General Assembly may at any time repeal any special, local, or private act.

As its language suggests, N.C. Const. art. XIV, § 3 addresses the distinction between general laws, which are applicable throughout the State, and local laws, which are only applicable in specified localities.

---

7. Plaintiffs cite various decisions, such as *City of Greensboro v. Hodgin,* 106 N.C. 182, 11 S.E. 586 (1890); *Commissioners v. Board of Education,* 163 N.C. 404, 79 S.E. 886 (1913); and *School District v. Alamance County,* 211 N.C. 213, 189 S.E. 873 (1937), in support of their "uniformity" argument. Each of these decisions addresses funding practices that undermined the uniformity of funding for traditional public schools. The Supreme Court never held in any of these cases that the General Assembly is prohibited from establishing optional educational programs whose requirements, regulation, and funding sources differ from those associated with traditional public schools.

*See, e.g., Adam v. Det. of N.E.R. and Everett v. Dept. of N.E.R.,* 295 N.C. 683, 249 S.E.2d 402 (1978) (discussing the distinction between general laws and local acts). We do not believe that there is any "general law" issue in this case, since the statutory provisions governing elementary and secondary education are applied uniformly throughout North Carolina. In addition, nothing in N.C. Const. art. XIV, § 3 in any way limits the General Assembly's authority to create and provide funding mechanisms for optional schools that differ from those applicable to traditional public schools. As a result, Plaintiffs' argument in reliance on N.C. Const. art. XIV, § 3 lacks merit.

### d. Other Constitutional Provisions

[5] Finally, we conclude that Plaintiffs' remaining constitutional arguments lack merit as well. Plaintiffs assert that the North Carolina "Constitution authorizes the State and counties to provide funding to public charter schools for capital needs."[8] As support for this argument, Plaintiffs rely on N.C. Const. art. IX, § 7, which provides that monies set aside for education shall be used "exclusively" for that purpose and that the "clear proceeds" of fines and forfeitures must be used "exclusively" for support of public schools. However, Plaintiffs have not asserted that funds intended to support public schools have been used for some other purpose. *See Cauble v. City of Asheville,* 66 N.C. App. 537, 544, 311 S.E.2d 889, 894 (1984), *aff'd,* 314 N.C. 598, 336 S.E.2d 59 (1985) (stating that the "manifest purpose" of N.C. Const. art. IX, § 7 is "to set aside property and revenue to support the public school system and prevent the diversion of such property and revenue to other purposes"). As a result, N.C. Const. art. IX, § 7 has no bearing on the proper resolution of this case.

In addition, Plaintiffs cite N.C. Const. art. IX, § 2(2), which provides that local school boards "may use local revenues to add to or supplement any public school or post-secondary school program." Although this generalized provision authorizes the use of local funds for education-related purposes, it does not address the criteria that the General Assembly must utilize in making funding decisions or preclude the General Assembly from adopting specific statutory provisions authorizing different funding systems for traditional public

---

8. The issue before the Court in this case is whether relevant statutory and constitutional provisions require counties to give charter schools access to their capital outlay fund, not whether a statutory provision to that effect would be constitutional. As a result of the fact that the General Assembly has not, for the reasons set forth above, afforded charter schools access to the counties' capital outlay funds, we express no opinion as to the manner in which that issue should be resolved.

schools and charter schools such as those at issue here. Therefore, N.C. Const. art. IX, § 2(2) has no bearing on the proper resolution of Plaintiffs' challenge to the trial court's dismissal order. As a result, neither of Plaintiffs' final constitutional challenges to the existing funding statutes applicable to charter schools has any merit.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court did not err by concluding that Plaintiffs' amended complaint failed to state a claim for which relief could be granted and granting Defendants' dismissal motion. At bottom, the issue that we have been asked to resolve in this case is one that must be decided by legislative action instead of a judicial decision. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges ELMORE and THIGPEN concur.